Seth M. Lehrman (178303)
seth@epllc.com
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile:  954-524-2822

Attorneys for Plaintiff
Retina Associates Medical Group, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| **RETINA ASSOCIATES MEDICAL GROUP, INC., individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**ALLIANCEMED, LLC d/b/a ALLIANCEMED and DRAYE TURNER,**<br><br>Defendants. | **CASE NO.  8:18-cv-01670-JVS-KES**<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Judge:     James V. Selna<br><br>Date:        July 13, 2020<br>Time:       1:30 P.M.<br>Courtroom:   10C<br><br>[Filed and Served Concurrently with Proposed Order] |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 13, 2020, at 1:30 p.m., before the United States District Court, Central District of California, Central District of California, Southern Division, Courtroom 10C, 411 West 4th Street, Room 1053 Santa Ana, CA 92701, Plaintiff Retina Associates Medical Group, Inc., will move for an order granting preliminary approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.


Date: June 15, 2020                    **EDWARDS POTTINGER LLC**

                                       By: */s/ Seth M. Lehrman*
                                           SETH M. LEHRMAN
                                           Attorney for Plaintiff

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3

Plaintiff's counsel certifies that prior to filing the instant motion, the Parties, through counsel, met and conferred pertaining to the subject matter of the instant motion. Defendant does not oppose this motion.

Date: June 15, 2020

**EDWARDS POTTINGER LLC**

By: */s/ Seth M. Lehrman*
    SETH M. LEHRMAN
    Attorney for Plaintiff

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ i

TABLE OF AUTHORITIES............................................................ iii

I. INTRODUCTION ...................................................................... 1

II. STATEMENT OF FACTS ..........................................................3

   A. Factual Background ...........................................................3

   B. Proceedings to Date ..........................................................3

      1. Litigation ....................................................................3

      2. Mediation ...................................................................5

   C. Statement of Facts .............................................................5

      1. The Class ....................................................................5

         a.  The Class definition ..........................................5

         b.  Class membership determination ......................6

      2. Settlement Payment ...................................................6

      3. Monetary benefit to Class Members and Class Notice ....................6

      4. Scope of Release ........................................................9

      5. Opportunity to opt out and object .............................9

      6. Payment of Notice and Administrative Costs ............9

      7.  Application for a Class Representative Award ...........10

      8. Class Counsels' application for attorneys' fees, costs, and expenses ....................10

      9. *Cy pres* distribution................................................11

III. ARGUMENT ...........................................................................11

   A. The legal standards for preliminary approval of a class action settlement .................................11

   B. Liability is highly contested and both sides face significant challenges in litigating this case .........................14

   C. Defendant's agreement to finance the common benefit fund provides a fair and substantial benefit to the Class.................................15

   D. The Settlement was reached through arm's-length negotiation, without collusion, with the assistance of two mediators...............15

PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

i

**E. Experienced counsel have determined that the Settlement is appropriate and fair to the Class** .................................................**15**

**F. The Court should preliminarily certify the Class for purposes of settlement** .........................................................................**16**

**G. The proposed Class in the thousands is numerous.** ...........................**16**

**H. The commonality requirement is satisfied, because common questions of law and fact exist** ..............................................**16**

**I. The typicality requirement is met** ..........................................**17**

**J. The adequacy requirement is satisfied** ....................................**17**

**K. Common questions predominate, sufficient to certify a Class for settlement purposes only** .......................................................**18**

**L. Class treatment for settlement purposes is superior to individual resolutions** ........................................................................**19**

**M. The proposed Class Notice is consistent with Rule 23 and the Ninth Circuit requirements and provides adequate notice for claims, objections and opt outs** ........................................................**20**

**N. The Court should preliminarily certify the Class for purposes of settlement.** ..........................................................................**23**

**O. The Court should appoint Angeion Group, LLC, as the Settlement Administrator** .....................................................................**24**

**P. The Final Approval Hearing should be scheduled** ..........................**24**

**IV. CONCLUSION** ....................................................................................**24**

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

ii

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Woodward*, 521 U.S. 591 (1997)..........................................20

*Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ...22

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)............................13

*Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741
   (M.D. Fla. Jan. 27, 1998) ....................................................................................20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ................... *passim*

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14
   (9th Cir. 1964).....................................................................................................16

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200
   (S.D.N.Y. 1995) ..................................................................................................12

*Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) ........................................13

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978).................23

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)................14

*Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283
   (S.D. Cal. May 29, 2012) ....................................................................................21

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ............................................................................18

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)...................21

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ....12, 13

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*,
   323 F. Supp. 364, 372 (E.D. Pa. 1970) ...............................................................13

*Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679
   (C.D. Cal. Nov. 13, 2012) ...................................................................................21

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)......................................................21

*Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688 (M.D. Fla. 2005)....20

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

iii

*Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370 (9th Cir. 1993).........................22

*Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443

   (9th Cir. 1989)............................................................................................12

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996)...........................19

*Wehner v. Syntex Corp.*, 117 F.R.D. 641 (N.D. Cal. 1987)....................................17

*West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971).....................13

*Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610

   (S.D. Cal. 2008) ............................................................................ 15-17

**Statutes**

28 U.S.C. § 1715............................................................................................2

Fed. R. Civ. P. 23 ..................................................................... *passim*

Telephone Consumer Protection Act, 47 U.S.C. § 227 .................................. *passim*

**Other Authorities**

*Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004)..............11, 13

*Moore's Federal Practice – Civil* § 23.165[3] (3d ed.)...........................................13

*Newberg on Class Actions* §§ 11.25, *et seq.*, and § 13.64

   (4th ed. 2002 and Supp. 2004) ...........................................................12

**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

iv

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.    INTRODUCTION.**

Plaintiff Retina Associates Medical Group, Inc. ("Plaintiff" or "Class Representative"), individually and on behalf of the "Settlement Class" (as defined below), submits this motion for preliminary approval of a proposed settlement ("Settlement") of this action ("Litigation") and certification of the proposed Settlement Class. Defendant AllianceMed, LLC ("Defendant" or "AllianceMed"), does not oppose Plaintiff's motion.  (Plaintiff and Defendant shall collectively be referred to as the "Parties").   The terms of the Settlement are set forth in the Settlement Agreement ("Agreement" or "Settlement"),[1] attached as **Exhibit A**.  *See* Declaration of Seth Lehrman ("Lehrman Decl."), ¶ 37, **Exhibit B**, and Declaration of Ronald J. Eisenberg ("Eisenberg Decl."), **Exhibit C**.

The proposed Settlement resulted from the Parties' participation in an all-day mediation session in Philadelphia in May 2019, and then additional mediation with Los Angeles mediator Stacie Feldman Hausner in April 2020.   The Settlement provides for a real financial benefit to the Class Members.  The Settlement Class, totaling 5,394 and previously certified, consists of all persons or business entities in the United States who in June 2018, as identified in AllianceMed's fax transmission records produced as CSV files, were successfully sent through Openfax an unsolicited fax advertisement by or on behalf of AllianceMed, but will exclude 44 AllianceMed clients as stipulated by the Parties ("Class Period").

The compromise Settlement reached with the guidance of mediators will create a Settlement Fund of $425,000, also called "Settlement Benefits," to be established by AllianceMed.   The amount of the Settlement Fund shall not be reduced as a result of any member of the Settlement Class electing to opt out or be excluded from the Settlement or for any other reason.  The Settlement Fund will pay

---

[1]      Unless otherwise specified, capitalized terms used in this memorandum are intended to have the same meaning ascribed to those terms in the Agreement.

1

for a Settlement Administrator, Angeion Group, LLC ("Angeion"), which will be responsible for providing notice to the Settlement Class, providing notice of this proposed settlement under 28 U.S.C. § 1715 ("Class Action Fairness Act" or "CAFA"), providing and disbursing settlement checks to Class Members who submit a claim form and who do not opt-out, creating and maintaining a Settlement Website, maintaining a toll-free telephone number, preparing an Opt-Out List, preparing a list of persons submitting objections to the settlement, and acting as a liaison between Class Members and the Parties regarding the settlement.  Settlement members who submit a Valid Claim Form and do not opt-out will receive by check a pro rata share of the Settlement Fund (after deduction of Settlement Administration Costs, attorneys' fees, expenses, and costs to Class Counsel, as approved by the Court,  a Class Representative Award, if any, to the Representative Plaintiff), and any *cy pres* distribution.  The Representative Plaintiff will receive an incentive payment of $5,000 (subject to Court approval) for bringing and litigating this action. Class Counsel will request an attorneys' fee award of up to $127,500 (i.e., 30% of the $425,000 Settlement Fund), plus reimbursement of litigation costs and expenses, subject to Court approval, to be paid out of the Settlement Fund.  Any unclaimed funds from uncashed settlement checks, shall be delivered to Medical Aid for Children of Latin America, Inc., a 501(c)(3) non-profit organization, or any other *cy pres* recipient selected by the Parties and approved by the Court.  This *cy pres* payment from the Settlement Fund will be after all settlement costs and direct payments to the Settlement Class are paid.

In consideration for the Settlement Fund, Plaintiff, on behalf of the proposed Settlement Class ("Class"), will dismiss the Litigation and release and discharge AllianceMed and other Released Parties from all claims relating to the Litigation.

While Plaintiff is confident of a favorable determination on the merits, it has determined that the proposed Settlement provides significant benefits to the Settlement Class and is in the best interests of the Settlement Class.  Plaintiff also

believes that the Settlement is appropriate because Plaintiff recognizes the expense and amount of time required to continue to pursue the Litigation, the uncertainty, risk, and difficulties of proof inherent in prosecuting TCPA claims, and the challenges of winning and then collecting a judgment.  Similarly, as evidenced by the Agreement, AllianceMed believes that it has substantial and meritorious defenses to Plaintiff's claims but has determined that it is desirable to settle the Litigation on the terms set forth in the Agreement.

Because Plaintiff believes that the proposed Settlement satisfies all of the criteria for preliminary approval, it  seeks an order preliminarily approving the proposed Settlement, provisionally certifying the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") for settlement purposes, directing dissemination of Class Notice, and scheduling a Final Approval Hearing.

## II.   STATEMENT OF FACTS.

### A.   Factual Background.

Plaintiff is a small, California ophthalmologic practice with its principal place of business in Orange County.  (Lehrman Decl. ¶ 29.) AllianceMed is a medical billing and consulting company based in Phoenix, Arizona.  (*Id.* ¶ 30.)  During the Class Period, AllianceMed sent to telephone facsimile machines 5,394 unsolicited advertisements without proper opt-out notices in connection with its marketing campaign.  (*Id.* ¶ 31.)  Plaintiff alleged that AllianceMed violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending to Plaintiff and the Class unsolicited fax advertisements that lacked proper opt-out notices. (DE 1 at 4-6.)  Plaintiff contended that it and the Class are entitled to statutory damages under the TCPA.  AllianceMed has vigorously denied that it violated the TCPA and has pleaded twenty-four affirmative defenses. (DE 16 at 6-9.)

### B.   Proceedings to Date.

#### 1.   Litigation.

In September 2018, a few months after having received a June 26, 2020 fax

advertising medical billing services, Plaintiff filed a Class Action Junk-Fax Complaint, alleging both non-willful and willful violations of the TCPA based on unsolicited facsimile advertisements. (DEs 1 & 1-1.) Plaintiff seeks $500 per non-willful violation and $1,500 for each knowing or willful violation. (DE 1 at 12.) Plaintiff's claim was brought on behalf of a class of individuals who allegedly received from AllianceMed unsolicited facsimile advertisements. (DE 1.)

In December 2018, the Parties submitted a joint proposed scheduling plan and elected private mediation. (DE 15 at 5.) AllianceMed then answered asserted twenty-four affirmative defenses. (DE 16 at 6-9.) The Parties also made their initial disclosures. (Lehrman Decl. ¶ 23.) The Parties served each other with written discovery requests and, in turn, answered discovery. (DE 37 at 3.) They also supplemented their responses. (Lehrman Decl. ¶ 23.) AllianceMed produced CSV files identifying the recipients of its fax advertisements. (ALLIANCEMED00386.csv to ALLIANCEMED00399.csv; Lehrman Decl. ¶ 23; Eisenberg Decl. ¶ 16.) In June 2019, Plaintiff took five depositions, including a Rule 30(b)(6) deposition. (Lehrman Decl. ¶ 24; DE 42-3.) AllianceMed then deposed Plaintiff's corporate representative. (Lehrman Decl. ¶ 24; DE 41-3.)

In August 2019, Plaintiff moved for class certification. (DEs 35 and 36.) AllianceMed filed a lengthy opposition. (DE 41.) After Plaintiff replied (DE 42) and the Court conducted oral argument (DE 44), the Court granted Plaintiff's motion for class certification in November 2019 (DE 47).

In December 2019, AllianceMed moved for summary judgment or, in the alternative, partial summary judgment. (DE 55.) Plaintiff filed an opposition (DE 56), in conjunction with the Parties' filing a stipulation to amend the class definition to exclude a small number of class members that were allegedly prior clients of AllianceMed, and to dismiss without prejudice claims against an individual defendant (DE 57). After AllianceMed filed a summary judgment reply (DE 59) and the Court conducted oral argument (DE 61), the Court denied AllianceMed's

summary judgment motion while simultaneously amending the class definition on accordance with the Parties' stipulation (DE 62).

In February 2020, the Parties filed a stipulation for approval of class action notice and proposed using Angeion to implement the notice plan.  (DE 63.)  The Parties also filed a joint stipulation to modify pretrial deadlines, including an extension of the settlement discussion deadline.  (DE 64.)  The Court granted both stipulations.  (DEs 65 and 66.)  In March, the Parties each filed motions *in limine*. (DEs 67-72.)  Shortly thereafter, the Parties filed another stipulation, this time seeking to modify the pretrial deadlines and trial date (DE 73), and the Court granted the stipulation, setting the case for a jury trial on August 11, 2020 (DE 74).

### 2. Mediation.

The Parties twice mediated this case:  once without success and once with success.  In May 2019, the Parties engaged in an all-day mediation session in Philadelphia with the Hon. John Hughes (Ret.) of JAMS, but no settlement was achieved at that mediation.  (DE 37 at 3; Lehrman Decl. ¶ 28.)  On April 21, 2020, the Parties engaged in video-conferenced mediation before Stacie Feldman Hausner, Esq., in Los Angeles, and this time reached a settlement.  (DEs 75-76; Lehrman Decl. ¶ 28.)

As set forth below, Plaintiff requests that the Court approve the Settlement.

### C. Statement of Facts.

#### 1. The Class.

##### a. The Class definition.

The "Class" is defined in the Agreement as follows:

All persons or business entities in the United States who in June 2018, as identified in AllianceMed's fax transmission records produced as CSV files, were successfully sent through Openfax an unsolicited fax advertisement by or on behalf of AllianceMed, but will exclude the 44 AllianceMed clients as stipulated by the parties.  Also excluded from

the Class are Defendant, its employees, agents, and members of the judiciary.

(Agreement § 10.7.)

### b. **Class membership determination.**

The Class consists of all persons, not clients of AllianceMed, who were sent AllianceMed's facsimile advertisements during Class Period, as stated above. (*Id.*) Based on documents produced by AllianceMed in discovery, and the class previously certified and then amended, the number of there are 5,394 Class Members. (DEs 58, 62 at 10-11.)

### 2. **Settlement Payment.**

Under the Proposed Settlement, AllianceMed agrees to establish a $425,000 Settlement Fund to fund (1) Settlement Administration Costs; (2) attorneys' fees, costs, and expenses to Class Counsel, as approved by the Court; (3) an incentive award, if any, to the Representative Plaintiff; (4) Class recovery on a pro rata basis up to $500 each to Class Members who submit a Valid Claim Form; and (5) any *cy pres* distribution. (Agreement § 10.35.) The amount of the Settlement Fund shall not be reduced because of any members of the Class electing to opt out or be excluded from the Settlement or for any other reason. (*Id.* § 10.35.2.)

### 3. **Monetary benefit to Class Members and Class Notice.**

The Settlement Agreement provides for $425,000 in cash benefits (minus Settlement Administrations Costs, attorneys' fees, costs, and expenses, and any incentive awards) to Class Members on a pro rata basis, up to $500 per Class Member, after the claims period. Should there be any funds remaining, such funds will go to the *cy pres* recipient. (*Id.* § 10.35.2.) There are 5,394 Class Members with unique facsimile numbers that received facsimile advertisements from AllianceMed. (DE 62 at 1, 10-11.) The Settlement Administrator will provide notice first via First Class U.S. Mail within 20 days of the Preliminary Approval Order. (Agreement § 12.2.) Claims Forms will also be available on the Settlement

6

Website and may be submitted online. (*Id.* § 12.9.)  The Claim Period will be the period of 60 days from the initial mailing of Class Notice to the Class by the Settlement Administrator.  (*Id.* § 10.5.)

Class Members who Opt Out, must postmark and mail to the Settlement Administrator a request to opt out before the Objection Deadline, which will be 65 days following entry for the Preliminary Approval Order (*id.* § 12.6); and the deadline to Opt Out and Object will be 60 days after mailing of the Class Notices (*id.* § 12.7).

Class Members who file a Claims Form and do not Opt Out or Object will each receive a pro-rata share of up to $500, with any remainder going to the *cy pres* recipient, as opposed to reverting to AllianceMed.  After Settlement Administration Costs, any attorneys' fees, costs, and expenses to Class Counsel, and any Class Representative Award, it is estimated there will be approximately $262,500 for the Settlement Class to be distributed pro-rata.  (Eisenberg Decl. ¶ 32.)  If each Class Member filed a Claims Form and did not Opt Out or Object, then each one would receive approximately $49.   (*Id.*)  If, more realistically, ten percent of the Class Members (540 members) filed Claims Forms, they would receive approximately $486 each.  (*Id.*)

The anticipated settlement amount to class members compares favorably to numerous similar TCPA class action settlements which have been approved by courts within the Ninth Circuit and California in particular.  Below is a chart of similar TCPA class action settlements that have received approval, including the value to each proposed class member for the respective case. (Lehrman Decl. ¶ 40.)

| Case and No. | Class Size | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Robles v. Lucky Brand Dungarees, Inc.* | 216,000 | $9.9 Million | $100 maximum |

| Case and No. | Class Size | Settlement Amount | Value per Class Member |
|---|---|---|---|
| No. 3:10-cv-04846 (NDCA) | | | |
| *Adams v. AllianceOne, Inc.* No. 08-cv-0248 (SDCA) | 5.63 Million | $9 Million | $40 maximum |
| *Hartman v. Comcast Business Communications* No. 2:10-cv-00413-RSL (WDWA) | 148,843 | $3.8 Million | $25.53 maximum |
| *Hovila v. Tween Brands, Inc.* No. 09-cv-00491-RSL (WDWA) | 100,000 | $5.33 Million Max | $20 Cash; or $45 Gift Certificate |
| *Clark v. Payless Shoesource, Inc.* No. 09-cv-00915-JCC | 8 Million | $6.25 Million | $25 Gift Certificate |
| *Cubbage v. The Talbots, Inc.* 09-cv-00911-BHS (WDWA) | 18,000 | $1.44 Million | $80 Gift Certificate ($40 Cash Value) |
| *In Re Jiffy Lube* No. 3:11-md-02261 | 2.3 Million | $47 Million | $17.29 Gift Certificate ($12.97 Cash Redemption) |
| *Bellows v. NCO Financial* No. 07-cv-1413-W(AJB) (SDCA) | Unknown, but thousands | $950,000 | $70 |
| *Lemieux v. Global Credit & Collection* | 27,844 | $505,000 | $70 |

| Case and No. | Class Size | Settlement Amount | Value per Class Member |
|---|---|---|---|
| No. 08-cv-1012-IEG(POR)(SDCA) | | | |
| *Gutierrez v. Barclays Group* <br> No. 10-cv-1012 (SDCA) | 66,100 | | $100 |
| *Arthur v. Sallie Mae, Inc.* <br> No. 10-cv-0198 (WDWA) | | $24.15 Million | $20-$40 |

### 4.   Scope of Release.

All Class Members who do not request exclusion will be deemed to have release any claim against the Released Parties arising out of unsolicited facsimile advertisements sent by or on behalf of AllianceMed to telephone facsimile machines during the Class Period.  (Agreement §§ 18.1, 18.4).  The release does not extend to claims beyond the faxing conduct alleged in the pleadings.

### 5.   Opportunity to opt out and object.

Class Members who Opt Out, must postmark and mail to the Settlement Administrator a request to opt out before the Objection Deadline, which will be 65 days following entry for the Preliminary Approval Order (*id.* § 12.6); and the deadline to Opt Out and Object will be 60 days after mailing of the Class Notices (*id.* §§ 12.1, 12.2, 12.6, 12.7).  Any Class Member who does not opt out and objects to the proposed settlement must file its objections to the Court.  (*Id.* § 12.7.)

### 6.   Payment of Notice and Administrative Costs.

AllianceMed shall fund the Settlement Benefits, which include Notice and Administrative Costs, by making installment payments via Automated Clearing House ("ACH") to the Settlement Administrator over 30 consecutive months due on the first business day of each month from June 1, 2020, to December 1, 2022. (Agreement §§ 15.2.)    AllianceMed already made the June 1, 2020 payment and

shall make the July 1, 2020 payment regardless of whether the Court has preliminarily approved the Settlement by that date.  (*Id.*)

The Settlement Administrator will use these funds to administer all costs of the settlement, including providing Class Notice, proving CAFA notice, maintaining the website and toll-free number and arranging for payments to Class Members.  The funds shall also be used to cover any Attorneys' Fee Award to Class Counsel, a Class Representative Award to Plaintiff, and any *cy pres* distribution.  (*Id.* § 10.35, 13.5, 13.6.)

### 7. <u>Application for a Class Representative Award.</u>

Class Counsel will request a Class Representative Award of $5,000 for Representative Plaintiff.  The Settlement Agreement, however, contains no "clear-sailing" provision as to an award.  (Agreement § 13.6.)

District Courts in California have opined that in many cases, an incentive award of $5,000 is presumptively reasonable.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942-43 (9th Cir. 2015) (finding that district court did not abuse its discretion in approving settlement in antitrust class action, despite objector's contention that 9 class representatives were inadequate because their representatives' awards, at $5,000 each, were larger than the $12 each unnamed class member would receive); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. Mar. 20, 2015) (finding that $5,000 payment is presumptively reasonable); *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. Jan. 17, 2014) (finding that request for $5,000 incentive award for each named plaintiff in consumers' Fair and Accurate Credit Transactions Act action was reasonable; those awards were consistent with the incentive payments courts typically awarded).

### 8. <u>Class Counsels' application for attorneys' fees, costs, and expenses.</u>

The Settlement Agreement expressly contains no "clear-sailing" provision as

1   to Class Counsel's compensation,  i.e., AllianceMed has the right to object.

2   (Agreement § 13.5.)  Class Counsel state that they intend to apply for an award of

3   attorneys' fees in the amount of  to $127,500 (i.e., 30% of the $425,000 Settlement

4   Fund), plus costs and expenses.

5   ### 9.   *Cy pres* distribution.

6   Based upon Class Counsel's estimates, if at least 525 Class Members submit

7   a Valid Claim Form, there will be no *cy pres* distribution based on a pro rata

8   increase, because each such Class Member would receive $500.  (Agreement §

9   10.35.2; Eisenberg Decl. ¶ 32.)  Under the proposed Settlement, there will be a *cy*

10  *pres* distribution only if there are any funds remaining after payments for (1)

11  Settlement Administration Costs, (2) any attorneys' fees, costs, and expenses to

12  Class Counsel, (3) any Class Representative Award, and (4) a Class recovery up top

13  $500 on a pro rata Class Members who submit a Valid Claim Form (Agreement §

14  10.35.2) or as to any uncashed checks (*id.* § 15.3).

15  **III.**   **ARGUMENT**

16  **A.**   **The legal standards for preliminary approval of a class action**

17  **settlement.**

18  "The claims, issues, or defenses of a certified class—or a class proposed to be

19  certified for purposes of settlement—may be settled, voluntarily dismissed, or

20  compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  Judicial

21  proceedings under Rule 23 have led to a defined procedure and specific criteria for

22  settlement approval in class action settlements, described in the *Manual for Complex*

23  *Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*") §§ 21.63, *et seq.*,

24  including preliminary approval, dissemination of notice to class members, and a

25  fairness hearing.  *Manual*, §§ 21.632, 21.633, 21.634. The purpose of the Court's

26  preliminary evaluation of the settlement is to determine whether it is within the

27  "range of reasonableness" and thus whether notice to the class of the terms and

28  conditions of the settlement, and the scheduling of a formal fairness hearing, are

worthwhile. *See* 4 Herbert B. Newberg, *Newberg on Class Actions* §§ 11.25, *et seq*., and § 13.64 (4th ed. 2002 and Supp. 2004) ("*Newberg*").  The Court is not required to undertake an in-depth consideration of the relevant factors for final approval. Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual*, § 21.632 (4th ed. 2004).

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Utility Reform Project v. Bonneville Power Admin*., 869 F.2d 437, 443 (9th Cir. 1989).  This is especially true in class actions such as this.  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982).  As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig*., 163 F.R.D. 200, 209 (S.D.N.Y. 1995).  To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("*Hanlon*").  Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027.

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate.  Rather, that decision is made

only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.). Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits, *Officers for Justice v. Civil Service Comm'n,* 688 F.2d at 625. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

Preliminary approval of the settlement should be granted if, as here, there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." *Manual for Complex Litigation* § 21.632, at 321 (4th ed. 2004).

Furthermore, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See, e.g.*, *Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal. 1988) (opinion of experienced counsel carries significant weight in court's determination of reasonableness of settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given presumption of reasonableness).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge." *See Hanlon*, 150 F.3d at 1026. This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See*

13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).

Based on these standards, Plaintiff submits that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable, and adequate.

**B.** **Liability is highly contested and both sides face significant challenges in litigating this case.**

AllianceMed has vigorously contested Plaintiff's claims. Although Plaintiff achieved a contested grant of class certification (DE 47), AllianceMed has preserved for appeal its arguments against certification. AllianceMed has also raised twenty-four affirmative defenses (DE 16 at 7-9), most of which were not at issue and, therefore not addressed, when the Court ruled on AllianceMed's motion for summary judgment (DE 62). The Parties have pending numerous motions *in limine*, including one by AllianceMed to preclude Plaintiff from introducing the OpenFax records that identify the recipients of AllianceMed's fax advertisements. (DEs 66-72.) While AllianceMed believes it has strong defenses, not only to the action as a whole, but to sustaining the grant of class certification, the damages if it were to lose at trial could be significantly higher than the settlement amount.

Likewise, in considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class. As a result, Class Counsel support the Settlement and seek its preliminary approval. (Lehrman Decl. ¶ 41; Eisenberg Decl. ¶ 40.)

The negotiated Settlement reflects a compromise between avoiding that risk and the risk that the Class might not recover. Because of the costs, risks to both sides, and delays of continued litigation and potential appeals, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation.

**C.**    **Defendant's agreement to finance the common benefit fund provides a fair and substantial benefit to the Class.**

As set forth above, AllianceMed has agreed to pay $425,000 to fund the settlement, which includes notice and claims administration costs, creating and maintaining a Settlement Website and toll-free number, providing CAFA notice, any Class Representative Award, and attorneys' fees, costs, and expenses.

**D.**    **The Settlement was reached through arm's-length negotiation, without collusion, with the assistance of two mediators.**

The proposed Settlement resulted from the Parties' participation in an all-day mediation session in May 2019 before a retired federal judge in Philadelphia, and then an additional mediation in April 2020 an experienced mediator, Ms. Feldman Hausner, in Los Angeles.   (Lehrman Decl. ¶¶ 28, 43.)   With the mediators' guidance, and both Parties facing motions *in limine* and a quickly approaching trial date, the Parties reached a proposed resolution.   The time and effort spent with six depositions, hotly contested motions, and two mediations militate in favor of preliminary approval of the proposed Settlement, as the process accurately indicates that there was no collusion.   *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

**E.**    **Experienced counsel have determined that the Settlement is appropriate and fair to the Class.**

The Parties are represented by counsel experienced in complex class action litigation. (Lehrman Decl. ¶ 11-17; Eisenberg Decl. ¶¶ 6-8, 11-13.)   Class Counsel have extensive experience in class actions, as well as expertise in class actions relating to consumer protection and specifically the TCPA.   Class Counsel—who have litigated more than 100 TCPA class actions—believe that under the circumstances, the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Class Members.   (Lehrman Decl. ¶ 47; Eisenberg Decl. ¶ 40.)

**F.**     **The Court should preliminarily certify the Class for purposes of settlement.**

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement. *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes").  Certification of a class for settlement purposes requires a determination that certain requirements of Rule 23 are met. *Id.*  As explained below, class certification is appropriate here because the Proposed Settlement meets the requirements of Rule 23(a) and (b)(3).

**G.**     **The proposed Class in the thousands is numerous.**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable. "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).  "[N]umerosity is presumed where the plaintiff class contains forty or more members."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). Here, the Settlement Class consists of 5,394 recipients of AllianceMed's facsimile advertisements during the Class Period. (Lehrman Decl. ¶ 31.)  Thus, the proposed Class is sufficiently numerous.

**H.**     **The commonality requirement is satisfied, because common questions of law and fact exist.**

The commonality requirement is met if there are questions of law and fact common to the class. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").  In seeking contested class certification, Plaintiff identified six questions of law that it claims were common to all class members.  (DEs 35-1 at 14-15.)   Granting class certification, this Court already agreed with Plaintiff that three of those question,

including whether there was an opt-out notice compliant with the TCPA, were common questions of law as to all class members, and therefore did not need to reach the other three.  (DEs 47 at 7-8.)  Those questions remain common ones for settlement purposes as well.  Moreover, the Settlement Class Members all seek the same remedy.  Under these circumstances, the commonality requirement is satisfied for certifying a settlement class.  *See Hanlon,* 150 F.3d at 1019-20.

### I.   The typicality requirement is met.

The typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  For purposes of settlement, Plaintiff's claim is typical of the Class because the claims arise from the same factual basis—unsolicited facsimile advertisements—and are based on the same legal theory, i.e., the faxes allegedly violated the TCPA.  *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).  Plaintiff claims that it received unsolicited fax advertisements from AllianceMed as the Class and that the faxes lacked proper opt-out notices. (DE 1 at 5 ¶ 20, 45; DE 1-1.)  In granting class certification, this Court already found that Plaintiff's claims are typical of the Class.  (DE 47 at 9.)  Thus, the typicality requirement is also satisfied for purposes of certifying a settlement class.

### J.   The adequacy requirement is satisfied.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Plaintiff and Class Counsel have no conflicts of interest with other Class Members because Plaintiff's claim is typical of those of other Settlement Class

Members.  In addition, Class Counsel have done work in identifying potential claims in the action and filed suit under the TCPA, which specifically addresses unsolicited faxes.  Class Counsel are experienced in handling class actions, other complex litigation, and the types of claims asserted in the action and have litigated numerous TCPA fax class actions.  Through those cases they have gained knowledge of the applicable law.  Class Counsel have committed and will commit resources to representing the Class. (Lehrman Decl. ¶¶ 48-49; Eisenberg Decl. ¶¶ 41-42.)

Plaintiff and Class Counsel have been prosecuting this litigation vigorously on behalf of the Class.  Plaintiff and Class Members share the common goal of protecting and improving privacy rights throughout the nation, and there is no conflict among them.  (Lehrman Decl. ¶ 54; Eisenberg Decl. ¶ 47.)  Class Counsel are qualified to represent the interests of the Class.  Rule 23(a)(4) is therefore satisfied for purposes of certifying a settlement class.

**K.** **Common questions predominate, sufficient to certify a Class for settlement purposes only.**

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Central to this question is "'the notion that the adjudication of common issues will help achieve judicial economy.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir.) (citation omitted), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling

the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

This Court already found that Plaintiff had satisfied the predominance requirement: "The central issue in the action here, which is common to the class and can be said to predominate, is whether Retina and other class members received unsolicited faxes which did not contain a proper opt-out notice." (DE 47 at 12.)

## L.   Class treatment for settlement purposes is superior to individual resolutions.

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at 1163; *see also Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("[A] class action is a superior method for managing litigation if no realistic alternative exists").

Consideration of the factors listed in Rule 23(b)(3) supports the conclusion that, for purposes of a settlement class, certification is appropriate. Ordinarily, these factors are (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable

management problems." *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997). "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998); *see also Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'") (citation omitted). Here, the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification:

- Any Settlement Class Member who wishes to pursue a separate action can opt out of the Settlement.
- There is no competing litigation regarding claims at issue.
- Plaintiff believes this forum is appropriate, and AllianceMed does not oppose the forum.

Moreover, this Court already found that Plaintiff had satisfied the superiority requirement. (DE 47 at 13.)

**M.**     **The proposed Class Notice is consistent with Rule 23 and the Ninth Circuit requirements and provides adequate notice for claims, objections and opt outs.**

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must order the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."

*Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Rather, notice must be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(c)(2)(B) sets forth requirements as to the content of the notice.  The notice must concisely and clearly state in plain, easily understood language (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Administrator shall disseminate the Class Notice in a form materially consistent with Exhibit A to the Agreement.  The Class Notice here satisfies each of the requirements of Rule 23(c)(2)(B) above.  Further, mailed notice has routinely been held to be adequate notice to a Settlement Class.  *See Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM JCX, 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) (approving notice plan where class members were sent postcards that directed them to a settlement website); *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS MDD, 2012 WL 1932283, at *1 (S.D. Cal. May 29, 2012) (final approval of class settlement using postcard notice and settlement website).

Class Counsel will provide to the Settlement Administrator files containing a list of Class Members. (Agreement § 12.1.)  The Settlement Administrator will

update the Class Member List through the National Change of Address database. (*Id*. § 12.3.)  The Class Notice then will be mailed to the updated address, and, if returned, re-mailed to any forwarding address is provided. (*Id*.)  *See generally Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving settlement in TCPA class action using reverse lookup to locate class members).

The Settlement Administrator will publish a Settlement Website within fourteen days of entry of a Preliminary Approval Order. The Settlement Website will contain the Preliminary Approval Order, Long Form Notice, Settlement Agreement, Claim Form, and Class Counsel's motion for an award of attorneys' fees and expenses and for a Class Representative Award. (*Id*. § 12.9.)  Accordingly, Settlement Class Members will have sufficient time after dissemination of Class Notice has been completed to opt out of the settlement or object. *Cf. Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as whole had notice adequate to flush out whatever objections might reasonably be related to settlement) (citing *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of notice which was mailed 26 days before deadline for opting out of settlement)).  Further, the Settlement Website shall be maintained and accessible to permit the online submission of claims and posting of any subsequent notices.  (*Id*. § 12.9.)

This notice program—centered on direct-mail notice—was designed to meaningfully reach the largest number of Settlement Class Members possible. Because AllianceMed's faxes were all sent in 2018, mailed notice will likely reach most Settlement Class Members.

The concurrent dissemination of the Long Form Class Notice on the Settlement Website, combined with the Class Notice, satisfies the requirements of due process and constitutes the best notice practicable under the circumstances.

22

The Settlement Administrator shall prepare and file a declaration prior to the Final Approval Hearing certifying that the notice program has been properly administered in accordance with this Agreement, this Court's Orders, and as described herein.

### N.   The Court should preliminarily certify the Class for purposes of settlement.

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The adequacy of representation requirement is met here.   Plaintiff Retina Associates, Inc., has already been appointed as the Class Representative.  (DE 47 at 10.)  Class Counsel request that both Seth M. Lehrman of Edwards Pottinger LLC and Ronald J. Eisenberg of Schultz & Associates LLP be appointed as Class Counsel for purposes of the Settlement.[2]  Plaintiff's counsel both have extensive TCPA and class action experience.  Plaintiff understands the obligations of serving as a class representative, have adequately represented the interests of the putative class, and have retained experienced counsel.  Plaintiff has no antagonistic or conflicting interests with the Settlement Class, and all members of the Settlement Class are eligible for the same benefits.

---

[2] Mr. Eisenberg successfully argued the class certification motion, provided a declaration in support of such motion (DEs 35-2, 44), and has been thoroughly involved in this case (Eisenberg Decl. ¶ 45.)  In the Adequacy section of the order granting class certification, this Court referred to Plaintiff's counsel as "they" and referenced, in part, Mr. Eisenberg's declaration (DE 47 at 9-10); however, near the end of the order appointed only Edwards Pottinger LLC as class counsel (*id.* at 13).

**O.**     **The Court should appoint Angeion Group, LLC, as the Settlement Administrator.**

The proposed Agreement recommends that this Court appoint Angeion to serve as the Settlement Administrator, because that company specializes in providing administrative services in class action litigation and has extensive experience in administering TCPA class action settlements.  (Agreement § 10.34.)  Moreover, this Court already recently appointed Angeion as Notice Administrator.  (DE 66 at 2.)  AllianceMed does not oppose this request.

**P.**     **The Final Approval Hearing should be scheduled**

The last step in the settlement approval process is the formal fairness or Final Approval Hearing, at which time the Court will hear all evidence and argument, for and against, the proposed Settlement.   Plaintiff requests that the Court grant preliminary approval of the Settlement and schedule a Final Approval Hearing to be held at least 90 days after the date of entry of the Preliminary Approval Order, in order to allow sufficient time for providing CAFA notice, the toll-free number and the Settlement Website, and completion of the period for class members to submit exclusion requests and objections.

**IV.**   **CONCLUSION**

For all the foregoing reasons, Plaintiff Retina Associates, Inc., requests that the Court enter an Order preliminarily approving the proposed Settlement and certifying a class for settlement purposes.


Date: June 15, 2020                                    EDWARDS POTTINGER LLC

                                                      By: */s/ Seth M. Lehrman*
                                                          SETH M. LEHRMAN
                                                          *Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

Filed electronically on this 15th day of June, 2020, with:

United States District Court CM/ECF system.

Notification sent electronically on this 15th day of June, 2020, to:

Honorable James V. Selna
United States District Court
Central District of California

John W. Leardi
Elizabeth A. Rice
Anthony F. Maul
Samuel J. St. Romain

/s/ Seth M. Lehrman, Esq.