Seth M. Lehrman (178303)
seth@epllc.com
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile:  954-524-2822

Ronald J. Eisenberg (*Pro Hac Vice*)
reisenberg@sl-lawyers.com
SCHULTZ & ASSOCIATES LLP
640 Cepi Drive, Suite A
Chesterfield, MO 63005
Telephone: 636-537-4645
Facsimile: 636-537-2599

Attorneys for Plaintiff
Joan Spencer-Ruper, assignee of Retina Associates
Medical Group, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| **JOAN SPENCER-RUPER, assignee of RETINA ASSOCIATES MEDICAL GROUP, INC., individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**ALLIANCEMED, LLC d/b/a ALLIANCEMED and DRAYE TURNER,**<br><br>Defendants. | **CASE NO.  8:18-cv-01670-JVS-KES**<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Judge:      James V. Selna<br>Date:       October 19, 2020<br>Time:       1:30 P.M.<br>Courtroom:  10C<br><br>[Filed and Served Concurrently with Proposed Order] |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 19, 2020, at 1:30 p.m., before the United States District Court, Central District of California, Central District of California, Southern Division, Courtroom 10C, 411 West 4th Street, Room 1053 Santa Ana, CA 92701, Plaintiff Joan Spencer-Ruper, assignee of Retina Associates Medical Group, Inc., will move for an order granting preliminary approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's Memorandum of Points and Authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Date: September 18, 2020                         **EDWARDS POTTINGER LLC**

By: */s/ Seth M. Lehrman*
SETH M. LEHRMAN
Attorney for Plaintiff

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3**

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, met and conferred pertaining to the subject matter of the instant motion. Defendant does not oppose this motion.

Date: September 18, 2020                         **EDWARDS POTTINGER LLC**

By: */s/ Seth M. Lehrman*
SETH M. LEHRMAN
Attorney for Plaintiff

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ i

TABLE OF AUTHORITIES ................................................................... iii

MEMORANDUM OF POINTS & AUTHORITIES ..................................1

    I.    INTRODUCTION. .............................................................1

    II.   STATEMENT OF FACTS. ...............................................2

        A.   Factual background. ..........................................2

        B.   Proceedings to date ...........................................2

           1. Litigation..................................................2

           2. Mediation and Preliminary Approval. ..............4

        C.   Statement of Facts. ...........................................4

           1. The Class...................................................4

              a.   The Class Definition ........................4

              b.   Class membership determination. ...........4

           2. Settlement Payment and *cy pres* distribution...................5

           3. Money benefit to Class Members and Class Notice. ........5

    III.  ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL............5

        A.   CAFA Notice ...............................................5

        B.   Direct Mail Notice .........................................6

        C.   Formal notice posted on the Settlement Website.............6

        D.   Objections, opt outs, and settlement payouts...................6

           1. No objections or opt outs..........................6

           2. Settlement checks and *cy pres* award. ..............7

           3. Class Representative incentive award. ............7

           4. Class Counsel's Application for Attorneys' Fees and Costs................8

5. Administrator's expenses for Notice and
Adminstration ............................................................8
IV. ARGUMENT ...........................................................8
A. Final approval of the proposed settlement is warranted .8
1. Adequacy of Representation by Class Representative
and Class Counsel..................................................9
2. Arm's-Length Negotiation ...................................10
3. Adequacy of Relief Provided for the Class.....................11
a. Costs, Risks, and Delay of Trial and Appeal ........11
b. Effectiveness of Method of Relief Distribution.....12
c. Terms of Proposed Award of Attorneys' Fees .....13
d. Agreement Identification Requirement ................14
e. New Opportunity to Be Excluded..........................14
4. Equitable Treatment of Class Members.........................14
5. The Court should finally certify the Class for purposes of
settlement............................................................15
a. The Settlement Class meets Rule 23(a)'s
requirements .................................................15
b. The Settlement Class meets Rule 23(b)(3)'s
requirements. ..............................................15
6. Class Notice was consistent with Rule 23 and the Ninth
Circuit requirements and provided adequate notice
for claims, objections and opt outs. ...........................17
7. $500 per valid claim is an exceptional outcome..............19
V. CONCLUSION ..........................................................20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Barani v. Wells Fargo Bank, N.A.*,
  No. 12CV2999-GPC KSC, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ...........18

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015)... 7

*Cf. Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir. 1993).......................18

*Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473 (S.D. Cal. 2013) .........................7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................8, 10, 16, 17

*In re Diamond Foods, Inc.*, Sec. Litig., No. C 11-05386 WHA,
  2014 WL 106826, (N.D. Cal. Jan. 10, 2014) .......................................................7

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) ........19

*In re Wireless Facilities,* 253 F.R.D. 607 (S.D. Cal. 2008)....................................15

*Lo v. Oxnard European Motors, LLC,*
  No. 11CV1009 JLS MDD, 2012 WL 1932283 (S.D. Cal. May 29, 2012) .........18

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
  244 F.3d 1152 (9th Cir. 2001) ......................................................................15, 16

*Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173 (9th Cir. 1977) ..........................18

*Miller v. CEVA Logistics USA, Inc.,*
  No. 2:13-CV-01321-TLN, 2015 WL 4730176 (E.D. Cal. Aug. 10, 2015)...........12

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)............17

*National Rural Tel. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...19

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............8

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) .......................10

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)...................................................12, 17

*Schaffer v. Litton Loan Servicing, LP,*
   No. CV 05-07673 MMM JCX, 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012)18

*Wershba v. Apple Computer, Inc.,* 91 Cal. App.4th 224 (2001)..............................12

**Statutes**

47 U.S.C. § 227............................................................................................... *passim*

**Rules**

28 U.S.C. § 1715..................................................................................................5

47 U.S.C. § 227............................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3)....................................................................................15

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................17

Fed. R. Civ. P. 23(e)(2)(A)-(D) ................................................................ *passim*

## MEMORANDUM OF POINTS & AUTHORITIES

### I.   INTRODUCTION

By order dated July 16, 2020 (ECF No. 78), this Court preliminarily approved the Settlement Agreement ("Agreement" or "Settlement") (ECF No. 77-1) reached between Plaintiff Retina Associates Medical Group, Inc. ("Plaintiff" or "Retina"), and Defendant AllianceMed, LLC d/b/a AllianceMed ("Defendant" or "AllianceMed"), in this junk-fax class action under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.[1]  Simultaneously, this Court directed Notice to be disseminated to the Settlement Class.  (ECF No. 78 at 14.)  The Notice plan approved by the Court has now been implemented and direct notice has reached the vast majority of the Settlement Class.  The response from the Settlement Class has been unanimously positive.  Not one member of the Settlement Class has to date objected or opted out.

The Settlement, which resulted from the parties' participation in an all-day mediation session in Philadelphia in May 2019, and then additional mediation with Los Angeles mediator Stacie Feldman Hausner in April 2020, provides for the considerable financial benefit of a non-reversionary $425,000 ("Settlement Fund") to the "Settlement Class," which consists of all persons or business entities in the United States who in June 2018, as identified in AllianceMed's fax transmission records produced as CSV files, were successfully sent through Openfax an unsolicited fax advertisement by or on behalf of AllianceMed, but excludes 44 AllianceMed clients as stipulated by the parties ("Class Period").

Although claims will continue to arrive until the October 4, 2020 Claims Deadline, based on the number of claims received thus far, and unless the number

---

[1] Retina has assigned its claim to Joan Spencer-Ruper, the person whom AlliancerMed deposed and the person from Retina most knowledgeable about this case.  Hereafter, she is likewise referred to as "Plaintiff" or "Retina."

1

of valid claims more than quadruples, each Class Member who submits a valid a claim is estimated to receive $500.

Retina now moves for final approval of this outstanding Settlement. Defendant does not oppose the motion.

## II.   STATEMENT OF FACTS

### A.   Factual background

Retina operated a small, California ophthalmologic practice with its principal place of business in Orange County.  (Lehrman Decl. ¶ 26, attached as **Exhibit A**.) AllianceMed is a medical billing and consulting company based in Phoenix, Arizona.  (*Id.* ¶ 27.)  During the Class Period, AllianceMed sent to thousands of telephone facsimile machines unsolicited advertisements without proper opt-out notices in connection with its marketing campaign.  (*Id.* ¶ 28.)  Retina alleged that AllianceMed violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending such fax advertisements that lacked proper opt-out notices and that Retina and the Class are entitled to statutory damages under the TCPA.  (*Id.* ¶¶ 29-30; ECF No. 1 at 4-6.)  AllianceMed has vigorously denied that it violated the TCPA and has pleaded numerous affirmative defenses.  (ECF No. 16 at 6-9.)

### B.   Proceedings to date

#### 1.   Litigation

In September 2018, a few months after having received a June 26, 2018 fax advertising medical billing services, Retina filed a Class Action Junk-Fax Complaint, alleging both non-willful and willful violations of the TCPA based on unsolicited facsimile advertisements and seeking $500 per non-willful violation and $1,500 for each knowing or willful violation.  (ECF Nos. 1 at 12 & 1-1.)  Retina's claim was brought on behalf of a class of persons who allegedly received from AllianceMed unsolicited facsimile advertisements. (ECF No. 1.)

In December 2018, the parties submitted a joint proposed scheduling plan and elected private mediation.  (ECF No. 15 at 5.)  AllianceMed then answered asserted

twenty-four affirmative defenses.  (ECF No. 16 at 6-9.)  The parties also made their initial disclosures.  (Lehrman Decl. ¶ 21.)  They served each other with written discovery requests and, in turn, answered discovery.  (*Id.*; ECF No. 37 at 3.)  They also supplemented their responses.  (Lehrman Decl. ¶ 21.)  AllianceMed produced CSV files identifying the recipients of its fax advertisements.  (ALLIANCEMED00386.csv to ALLIANCEMED00399.csv; Lehrman Decl. ¶ 21; Eisenberg Decl. ¶ 14.)  In June 2019, Retina took five depositions, including a Rule 30(b)(6) deposition.  (Lehrman Decl. ¶ 21; ECF No. 42-3.)  AllianceMed, in turn, deposed Joan Spencer-Ruper as Retina's corporate representative.  (Lehrman Decl. ¶ 24; ECF No. 41-3.)

In August 2019, Retina moved for class certification.  (ECF Nos. 35 and 36.)  AllianceMed filed a lengthy opposition.  (ECF No. 41.)  After Retina replied (ECF No. 42) and the Court conducted oral argument (ECF No. 44), the Court granted Retina's motion for class certification in November 2019 (ECF No. 47).

In December 2019, AllianceMed moved for summary judgment or, in the alternative, partial summary judgment.  (ECF No. 55.)  Retina filed an opposition (ECF No. 56), in conjunction with the parties' filing a stipulation to amend the class definition to exclude a small number of class members that were allegedly prior clients of AllianceMed, and to dismiss without prejudice claims against an individual defendant (ECF No. 57).  After AllianceMed filed a summary judgment reply (ECF No. 59) and the Court conducted oral argument (ECF No. 61), the Court denied AllianceMed's summary judgment motion while simultaneously amending the class definition in accordance with the parties' stipulation (ECF No. 62).

In February 2020, the parties filed a stipulation for approval of class action notice and proposed using Angeion Group, LLC ("Angeion") to implement the notice plan.  (ECF No. 63.)  The parties also filed a joint stipulation to modify pretrial deadlines, including an extension of the settlement discussion deadline.  (ECF No. 64.)  The Court granted both stipulations.  (ECF Nos. 65 and 66.)  In March, the

parties each filed motions *in limine*.   (ECF Nos. 67-72.)   Shortly thereafter, the parties filed another stipulation, this time seeking to modify the pretrial deadlines and trial date (ECF No. 73), and the Court granted the stipulation, setting the case for a jury trial on August 11, 2020 (ECF No. 74).

### 2.   Mediation and Preliminary Approval

The parties twice mediated this case:  once without success and once with success.   In May 2019, the parties engaged in an all-day mediation session in Philadelphia with the Hon. John Hughes (Ret.) of JAMS, but no settlement was achieved at that mediation.  (ECF No. 37 at 3; Lehrman Decl. ¶ 24.)  On April 21, 2020, the parties engaged in video-conferenced mediation before Stacie Feldman Hausner, Esq., in Los Angeles, and this time reached a settlement in theory.  (ECF Nos. 75-76; Lehrman Decl. ¶ 24.)  On June 15, 2020, Retina moved for preliminary approval of the class action settlement and certification of the Settlement Class. (ECF No. 77.)  On July 16, the Court granted Retina's motion.  (ECF No. 78.)

### C.   Statement of Facts

#### 1.   The Class

##### a.   The Class definition

The "Class" is defined in the Agreement as follows:

> All persons or business entities in the United States who in June 2018, as identified in AllianceMed's fax transmission records produced as CSV files, were successfully sent through Openfax an unsolicited fax advertisement by or on behalf of AllianceMed, but will exclude the 44 AllianceMed clients as stipulated by the parties.  Also excluded from the Class are Defendant, its employees, agents, and members of the judiciary.

(Agreement § 10.7.)

##### b.   Class membership determination

The Class consists of all persons, not clients of AllianceMed, who were sent AllianceMed's facsimile advertisements during Class Period, as stated above.  (*Id.*)

Based on documents produced by AllianceMed in discovery, and the class previously certified and then amended, there are 5,394 Class Members. (ECF Nos. 58, 62 at 10-11.)

### 2.  <u>Settlement Payment and *cy pres* distribution</u>

Under the Proposed Settlement, AllianceMed agrees to establish a $425,000 Settlement Fund to fund (1) Settlement Administration Costs; (2) attorneys' fees, costs, and expenses to Class Counsel, as approved by the Court; (3) an incentive award, if any, to the Representative Plaintiff; (4) Class recovery on a pro rata basis up to $500 each to Class Members who submit a Valid Claim Form; and (5) any *cy pres* distribution with the parties proposing Medical Aid for Children of Latin America, Inc. ("MACLA"), a 501(c)(3) non-profit organization that since 1985 has been performing free surgeries for underprivileged children with physical deformities such as cleft lips and palates, burn scar contractures, and soft tissue deformities.  (Agreement §§ 10.35, 10.35.2.)  The amount of the Settlement Fund shall not be reduced because of any members of the Class electing to opt out or be excluded from the Settlement or for any other reason.  (*Id.* § 10.35.2.)

### 3.  <u>Monetary benefit to Class Members</u>

The Settlement Agreement provides for $425,000 in cash benefits (minus Settlement Administrations Costs, attorneys' fees, costs, and expenses, and any incentive awards) to Class Members on a pro rata basis, up to $500 per Class Member, after the claims period.  Should there be any funds remaining, such funds will go to the *cy pres* recipient.  (*Id.* § 10.35.2.)

## III.  <span style="font-variant:small-caps">Activity In The Case After Preliminary Approval</span>

The Claims Administrator's compliance is described below.

### A.  <u>CAFA Notice</u>

On June 25, 2020, in compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Angeion mailed a cover letter to the U.S. Attorneys General and the Attorneys General for all 50 states and territories/other parties

along with a CD-ROM containing the requisite documents.  (Chumley Decl. re Settlement Admin. ¶ 17, attached as **Exhibit C**.)  Class Counsel did not receive communications from any recipient of the CAFA Notice.  (Eisenberg Decl. ¶ 45, attached as **Exhibit B**.)

### B.    Direct Mail Notice

As explained in detail in the Declaration of Ryan Chumley regarding Settlement Administration, Angeion complied with the notice procedure set forth in the Preliminary Approval Order.  (Chumley Decl. ¶¶ 5-10; ECF No. 78 at 3.)  After conducting two reverse appends and processing mailing addresses through the United States Postal Service ("USPS") National Change of Address database, Angeion sent notice via USPA on August 5, 2020, to the 3,754 Class Members with an identified address.  (Chumley Decl. ¶¶ 6-9; Agreement § 12.2.)  The USPS returned 332 of the initial Notices mailed as undeliverable, three of which contained a forwarding address to which Angeion remailed Notices.  (Chumley Decl. ¶ 10.)  Of the 329 records returned as undeliverable, Angeion located a new address for 152 records.  (*Id.*)  Angeion updated the Class Member database and re-mailed Notices to the Class Members located via this process.  (*Id.*)  As a result of the above described efforts, a total of 155 Notices were re-mailed, and none of the re-mailed Notices, were returned by the USPS a second time.  (*Id.*)  The notice provided in this case, satisfies the due process requirements of sufficient reach to the Class.

### C.    Formal notice posted on the Settlement Website

In compliance with the Preliminary Approval Order, Angeion established a Settlement Website, www.medicalfaxsettlement.com.  On the website, visitors can view answers to frequently asked questions and download important case documents including the Claim Form.  (Chumley Decl. ¶ 11.)

### D.    Objections, opt outs, and settlement payouts

#### 1.    No objections or opt outs

Class Members are being provided with significant time to review the

Settlement and make timely opt outs and objections.  Those who wish to opt out or object have until October 4, 2020 to do so.  (Chumley Decl. ¶¶ 13-14; Agreement § 12.7.)  Thus far, there have been zero opt outs and zero objectors to the Settlement. (Chumley Decl. ¶¶ 14-15.)

The fact that there have been not only no objections—despite direct notice and the constant presence of an aggressive professional objectors' bar—but also no opt outs, is a testament to the strength and fairness of the Settlement. *See In re Diamond Foods, Inc., Sec. Litig.*, No. C 11-05386 WHA, 2014 WL 106826, at *2 (N.D. Cal. Jan. 10, 2014) (noting, as support for approval, that there had been only 29 requests to opt out of class and no objection to settlement or requested attorney's fees and expenses); *Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473, 481 (S.D. Cal. 2013) (fact that only 62 class members filed timely requests to opt out indicates that vast majority of class members reacted favorably to the proposed settlement).

### 2.    Settlement checks and *cy pres* award

As of September 16, 2020, there have been 90 claims made.  (Chumley Decl. ¶ 13.)  Unless the number of approved claims increases to at least 475 by the October 4, 2020 deadline, a reduction in the $500 award amount is not anticipated.  (*Id.* ¶ 17; Eisenberg Decl. ¶ 22.) After deduction of Angeion's administration fees, estimated to be $30,000, Class Counsel's requested fees of $127,500 and expenses and costs of $20,399.64, and a requested incentive award of $5,000, there would be approximately $242,100.36 available to distribute to the Class and to MACLA.

### 3.    Class Representative incentive award

District courts in California have opined, in many cases, that a class representative or incentive award of $5,000 is presumptively reasonable. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. Mar. 20, 2015) (finding that "[i]n this district, a $5,000 payment is presumptively reasonable").  Retina requests a $5,000 incentive award for the work it performed on Class's behalf and the substantial benefit it helped the Class receive.  Plaintiff's

Motion for Attorneys' Fees and Expenses, Costs, and Incentive Award, filed separately, details Retina's meaningful and active contribution to this litigation and the lack of any opposition to such an award.

### 4. Class Counsel's Application for Attorneys' Fees and Costs

The Settlement Agreement expressly contained no "clear-sailing" provision as to Class Counsel's compensation. (Agreement § 13.5.)   In the preliminary approval order, the Court noted that Class Counsel intended to apply for an award of attorneys' fees in the amount of $127,500 (i.e., 30% of the $425,000 settlement), plus costs and expenses.  (ECF No. 78 at 4.)  Class Counsel now request $127,500 in attorneys' fees and $20,399.64 in costs and expenses. Those amounts are explained in detail in Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award.  Retina asks the Court the award the requested sums to compensate Class Counsel for their time and efforts in litigating this contingency case on behalf of the Class and obtaining an excellent result for the Class.

### 5. Administrator's expenses for Notice and Administration

AllianceMed has agreed to pay all costs of notice and claims administration from the Settlement Fund.  Angeion has estimated the final cost of administration to be $30,000.  (Chumley Decl. ¶ 18.)

### IV. ARGUMENT

#### A. Final approval of the proposed settlement is warranted

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).  The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  The Court may approve a settlement that would bind class members only after a hearing

and on finding that the settlement is fair, reasonable, and adequate, after considering whether:

>  (A) the class representatives and class counsel have adequately represented the class;

>  (B) the proposal was negotiated at arm's length;

>  (C) the relief provided for the class is adequate, taking into account:

>>  (i) the costs, risks, and delay of trial and appeal;

>>  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>>  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

>>  (iv) any agreement required to be identified under Rule 23(e)(3); and

>  (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

The Court has already preliminarily found the requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied.  (ECF No. 78.)  The relevant factors demonstrate that the proposed Settlement should be finally approved as fair, reasonable, and adequate.

### 1.   **Adequacy of Representation by Class Representative and Class Counsel**

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representative and class counsel have adequately represented the class.  This analysis includes for example, "the nature and amount of discovery" undertaken in the litigation, or "the actual outcomes of other cases."  Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.

1   The nature and amount of discovery completed cannot be characterized as
2   anything but significant and substantial.  The parties served each other with written
3   discovery requests and, in turn, answered discovery.  (Lehrman Decl. ¶ 21.)  They
4   also supplemented their responses.  (*Id*.)  Retina obtained CSV files identifying the
5   recipients of AllianceMed's fax advertisements.  (*Id*.)  In June 2019, Retina took
6   five depositions, including a Rule 30(b)(6) deposition.  (*Id*.)  AllianceMed, in turn,
7   deposed Joan Spencer-Ruper as Retina's corporate representative.  (*Id*.)

8   In addition, Class Counsel have extensive experience in litigating class
9   actions and particular expertise in consumer protection and TCPA litigation and
10   have obtained meaningful outcomes in other TCPA class actions.  (Lehrman Decl.
11   ¶ 12-16; Eisenberg Decl. ¶¶ 7, 11-13.)  Accordingly, Plaintiff requests that the Court
12   find that both Ronald Eisenberg and Seth Lehrman are adequate under Rule
13   23(e)(2)(A) and appoint them both as Class Counsel.

### 2.   Arm's-Length Negotiation

15   The second Rule 23(e)(2) factor calls for confirmation that the proposed
16   settlement was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  The Ninth
17   Circuit has long supported settlements reached by capable opponents in arm's-length
18   negotiations.  In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009),
19   the Ninth Circuit expressed the opinion that courts should defer to the "private
20   consensual decision of the [settling] parties." *Id*. at 965 (citing *Hanlon*, 150 F.3d at
21   1027 (9th Cir. 1998)).

22   As noted above, the parties twice mediated this case:  once without success
23   and once ultimately leading to success.  In May 2019, the parties engaged in an all-
24   day mediation session in Philadelphia with the Hon. John Hughes (Ret.), but no
25   settlement was achieved.  (ECF No. 37 at 3; Lehrman Decl. ¶ 24.)  In April 2020,
26   the parties engaged in mediation before Stacie Feldman Hausner, Esq., in Los
27   Angeles, and this time reached a settlement in theory.  (Lehrman Decl. ¶ 24.)
28   Thereafter, the parties continued negotiations to agree to the Settlement.  (*Id.*)  The

second mediation was conducted after contested motions for summary judgment and class certification, and after six motions *in limine* had been filed.  (ECF No. 78 at 7.)  The Settlement was not the product of collusion but rather of hard-fought litigation and a reasonable compromise.

### 3.   Adequacy of Relief Provided for the Class

The third Rule 23(e)(2) consideration is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  The relief "to class members is a central concern."  Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes.

### a.   Costs, Risks, and Delay of Trial and Appeal

Although Retina feels strongly about the case's merits, there are costs and risks to continuing the litigation.  All litigation is risky but with the TCPA climate in constant flux—with issues of Article III standing falling both ways and courts differing when ruling on predominance issues—no one can predict the outcome of a case.  If the case were to continue, Retina would need to win at trial, defend the judgment on appeal, and—most importantly—collect the judgment.  If Retina were to prevail at trial and receive a statutory award of $500 for each of the faxes AllianceMed sent, the judgment could be $2,697,000 or up to treble that number if it were able to prove that AllianceMed's violations were done willfully or knowingly.  *See* 47 U.S.C. § 227(b)(3).  Such a large judgment, however, could backfire against Retina and push AllianceMed into bankruptcy or simply to cease conducting its business operations.  Even at a $425,000, AllianceMed only agreed to settle contingent upon a 30-month installment plan to fund the settlement.  (ECF No. 77-1 ¶ 15.2.)

11

1    As this Court noted granting preliminary approval, "In the context of a

2    settlement . . . the test is not the maximum amount plaintiffs might have obtained at

3    trial on the complaint, but rather whether the settlement is reasonable under all of

4    the circumstances." *Wershba v. Apple Computer, Inc.*, 91 Cal. App.4th 224, 250

5    (2001). (ECF No. 78 at 7.)  In considering the Settlement, Retina and Class Counsel

6    carefully balanced all of the risks of continuing to engage in protracted and

7    contentious litigation against the benefits available to the Class by settling and

8    consequently support the Settlement and seek its final approval. (Lehrman Decl. ¶

9    60; Eisenberg Decl. ¶ 44.)  *See Miller v. CEVA Logistics USA, Inc.*, No. 2:13-CV-

10   01321-TLN, 2015 WL 4730176, at *5 (E.D. Cal. Aug. 10, 2015) ("With this

11   settlement, the Settlement Class Members have an opportunity for an immediate,

12   guaranteed payout instead of prolonged litigation which will run the risk of

13   uncertain recovery.").  Plus, an experienced mediator, intimately familiar with the

14   instant litigation and TCPA litigation as a whole, agreed with the parties and helped

15   them craft a fair compromise.  (ECF Nos. 75-76.)

16              **b.    Effectiveness of Method of Relief Distribution**

17          Next, this Court must consider "the effectiveness of any proposed method of

18   distributing relief to the class, including the method of processing class-member

19   claims." Fed. R. Civ. P. 23(e)(2)(C)(ii).  "Often it will be important for the court to

20   scrutinize the method of claims processing to ensure that it facilitates filing

21   legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A

22   claims processing method should deter or defeat unjustified claims, but the court

23   should be alert to whether the claims process is unduly demanding." *Id.*  Rule

24   23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must

25   direct to class members the "best notice practicable" under the circumstances. Rule

26   23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."

27   *Silber v. Mabon*, 18 F. 3d 1449, 1454 (9th Cir. 1994).

28

Angeion provided notice via First Class U.S. Mail to class members. (Chumley Decl. ¶¶ 8-10; Settlement Agreement § 12.2.)  Angeion also made Claims forms available on the Settlement website and that website allowed for online submissions.  (Settlement Agreement § 12.9.)  To be valid, the claim form was required to be substantially filled out, timely, and correct (defining incorrect as forms that contain false statements or if the class member otherwise is not entitled or authorized to be treated as claimed).  (*Id.* § 10.40.)  The Claim Form, attached as Exhibit B to the Settlement Administrator's declaration, is consistent with the draft attached to the Settlement Agreement and preliminarily approved by the Court. (Chumley Decl. Ex. A; ECF. No. 77-1 at 23.)  The Claim Form contained a certification "under penalty of perjury" to maintain the integrity of the claims process. (Chumley Decl. Ex. A.)  The claims process was sufficiently thorough, but not unduly demanding, and the proposed method of distribution, i.e., mailing checks that will be valid for 90 days after issuance (Settlement Agreement §§ 15.6, 16), is effective.  Overall, the distribution process here is simple, effective, and common in TCPA settlements.

### c.   Terms of Proposed Award of Attorneys' Fees

The Court must also consider "the terms of any proposed award of attorneys' fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(c).

As previously indicated in the Settlement Agreement and Retina's motion for preliminary approval, Class Counsel is applying for an award of attorneys' fees of $127,500 (i.e., 30% of the $425,000 Settlement Fund), plus costs and expenses. Because Retina is contemporaneously filing Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award, Retina will not burden the Court with unnecessary duplication here.  In the fee motion, Retina follows the Court's instructions from the preliminary approval order, "to provide the relevant information to justify entitlement to their requested fee award, including a lodestar calculation." (ECF No. 76 at 9.)  Class Counsel strongly believe that such requested fees are fully supported

13

under both the percentage-of-the-fund and under the lodestar approach, which, due to the amount of work done on this heavily litigated case, would result in a significant *negative* lodestar multiplier.  Finally, Class Counsel would not receive any payment ahead of the Class.  (Settlement Agreement § 15.3.)

### d.   Agreement Identification Requirement

Although the Court must evaluate any agreement made in connection with the proposed Settlement, *see* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3), the Settlement Agreement before the Court is the sole agreement between the parties.  Thus, the Court need not evaluate any additional agreements.

### e.   New Opportunity to Be Excluded

Although this case had previously been certified following a contested class certification motion, Class Members deserve a new opportunity to request exclusion now that the parties are settling.  *See* Fed. R. Civ. P. 23(e)(4) ("If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.").  Class Members have been given that opportunity but none to date have wanted out from the Settlement.  (Chumley Decl. ¶ 14.)

### 4.   Equitable Treatment of Class Members

The final Rule 23(e)(2) factor concerns whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).

In the preliminary approval order, the Court noted that Class Counsel would be seeking a $5,000 incentive award for Retina, that the Settlement Agreement contained no "clear-sailing" provision concerning such an award, and that Class Counsel estimated that Class Members would receive between $49 and $486 each. (ECF No. 78 at 10.)  The Court expressed uncertainty, based on the record, what the scope of Retina's participation in the action was, and hence, stated that it would only

approve an award to Retina if the award were supported by adequate proof, including Retina's approximate time spent on the case.  (*Id.*)

Because Retina is contemporaneously filing Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award, Retina will not burden the Court with unnecessary duplication here.  In that motion, Retina follows the Court's instructions, providing a declaration estimating the number of hours that Retina has devoted to this litigation and explaining how Retina has contributed, as well as requesting a $5,000 award.

Retina is seeking for the Class to be paid fully before Class Counsel is paid any attorneys' fee and expenses and before Retina is paid any incentive award.

## 5. The Court should finally certify the Class for purposes of settlement

Certification of a class for settlement purposes requires a determination that certain requirements of Rule 23 are met.  *See In re Wireless Facilities*, 253 F.R.D. at 610.  As explained below, class certification is appropriate here because the Proposed Settlement meets the requirements of Rule 23(a) and (b)(3).

### a. The Settlement Class meets Rule 23(a)'s requirements

The Court previously certified a class in this action.  (ECF Nos. 47, 66.)  The Settlement Class and the class previously certified by the Court remains the same. (ECF No. 66; *cf.* Settlement Agreement § 10.7.)  Given that the Court expressly found it  unnecessary to reiterate the class action prerequisites under Rule 23(a)(1)-(4) in the Court's preliminary approval order, so as to conserve judicial resources, Retina will rely on the same rationale.  *See* Fed. R. Civ. P. 23(a)(1)-(4).

### b. The Settlement Class meets Rule 23(b)(3)'s requirements

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Local*

*Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022.

In the order granting Retina's contested motion for class certification, this Court has already found that common questions of law and fact predominate over individual questions:  "The central issue in the action here, which is common to the class and can be said to predominate, is whether Retina and other class members received unsolicited faxes which did not contain a proper opt-out notice"  (ECF No. 47 at 10-12; *see also* ECF No. 78 at 12.)   For final approval purposes, that finding remains correct, as does the Court's prior determination that "[w]hether the opt-out notice is proper is the predominant and common issue that can be resolved with class-wide proof."  (ECF No. 47 at 12.)

Likewise, in the order granting Retina's contested motion for class certification, this Court has already found that a class action is a superior method to resolve the Class claims.  (ECF No. 47 at 12-13; *see also* ECF No. 78 at 12.)  This Court agreed with Retina that a class action here is superior to other available methods because (1) class members are presumably unaware that their rights may have been violated and individual recovery would be limited and do not incentivize individuals to bring suit, (2) none of the members of the class that Retina seeks to represent have filed a TCPA suit in federal court, (3) a significant portion of the class has numbers with California area codes, and (4) managing the class action here would be easier than in other TCPA fax class actions given that the fax numbers were obtained through the same website, the faxes sent were comparable, and the faxes were sent through the same platform.  (ECF No. 47 at 12-13.)  For final approval purposes, those reasons remain valid.

**6.** **Class Notice was consistent with Rule 23 and the Ninth Circuit requirements and provided adequate notice for claims, objections and opt outs**

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must order the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Rather, notice must be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) sets forth requirements as to the content of the notice. The notice must concisely and clearly state in plain, easily understood language (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

17

The Settlement Administrator disseminated the Class Notice in a form materially consistent with Exhibit A to the Settlement Agreement. The Class Notice here satisfies each of the requirements of Rule 23(c)(2)(B) above. Further, mailed notice has routinely been held to be adequate notice to a Settlement Class. *See Schaffer v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM JCX, 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) (approving notice plan where class members were sent postcards that directed them to a settlement website); *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS MDD, 2012 WL 1932283, at *1 (S.D. Cal. May 29, 2012) (final approval of class settlement using postcard notice and settlement website).

Defendant provided to the Settlement Administrator the Settlement Class List, consisting of seven CSV files which it confirmed listed 5,437 records where a fax transmission was listed as "Successful." (Declaration of Ryan Chumley hereinafter "Chumley Decl.", ¶ 6). The Settlement Administrator updated the Settlement Class List through the National Change of Address database. (Chumley Decl. ¶ 8). The Class Notice was mailed to the updated address, and, if returned, re-mailed to any forwarding address provided. (*Id*., ¶¶ 9 and 10) *See generally Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving settlement in TCPA class action using reverse lookup to locate class members).

The Settlement Administrator published a Settlement Website within fourteen days of entry of a Preliminary Approval Order and included the key documents. (Chumley Decl. ¶ 11.) Accordingly, Settlement Class Members had, and still have, sufficient time to opt out of the settlement or object. *Cf. Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1374-75 (9th Cir. 1993) (31 days is more than sufficient, as Class as whole had notice adequate to flush out whatever objections might reasonably be related to settlement) (citing *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of notice which

was mailed 26 days before deadline for opting out of settlement)).  Further, the Settlement Website will be maintained and accessible to permit the online submission of claims and posting of any subsequent notices.  (Settlement Agreement, § 12.9.)

This notice program—centered on direct-mail notice—was designed to meaningfully reach the largest number of Settlement Class Members possible. Because AllianceMed's faxes were all sent in 2018, mailed notice reached most Settlement Class Members.  The concurrent dissemination of the Long Form Class Notice on the Settlement Website, combined with the Class Notice, satisfied due process and constituted the best notice practicable under the circumstances.

### 7.    $500 per valid claim is an exceptional outcome

Although it is well-settled that a settlement may be acceptable even if it amounts to only a small percentage of the potential recovery that might be available to the class at trial,[2] the Settlement nonetheless represents an unusually high per-person recovery for a TCPA case, given that the maximum statutory damages for a non-knowing or non-willful violation is only $500.  Most TCPA settlements pay far less to each claiming class member:

| Case and No. | Class Size | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Robles v. Lucky Brand Dungarees, Inc.*, No. 3:10-cv-04846 (N.D. Ca.) | 216,000 | $9.9 Million | $100 maximum |
| *Adams v. AllianceOne, Inc.*, No. 08-cv-0248 (S.D. Ca.) | 5.63 Million | $9 Million | $40 maximum |
| *Hovila v. Tween Brands, Inc.*, | 100,000 | $5.33 Million Max | $20 Cash or $45 Gift Certificate |

---

[2] *National Rural Tel. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (noting well-settled law that proposed settlement may be acceptable even though it amounts to only fraction of potential recovery); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of maximum potential recovery).

| Case and No. | Class Size | Settlement Amount | Value per Class Member |
|---|---|---|---|
| No. 09-cv-00491-RSL (W.D. Wa.) | | | |
| *Clark v. Payless Shoesource, Inc.*, No. 09-cv-00915-JCC (W.D. Wa.) | 8 Million | $6.25 Million | $25 Gift Certificate |
| *Bellows v. NCO Fin.*, No. 07-cv-1413-W (AJB) (S.D. Ca.) | Unknown, but in thousands | $950,000 | $70 |
| *Lemieux v. Global Credit & Collection*, No. 08-cv-1012-IEG(POR) (S.D. Ca.) | 27,844 | $505,000 | $70 |

A TCPA settlement whereby class members receive checks for even a fraction of the $500 anticipated here is rare indeed.

## V.   CONCLUSION

For all the foregoing reasons, Plaintiff requests that the Court

A.    Grant final approval of the proposed settlement;

B.    Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;

C.    Grant the Motion for Attorney's Fees, Costs, and Incentive Payment and award Class Counsel $127,500 in attorneys' fees and $20,399.64 in costs, and award Retina a $5,000 incentive award;

D.     Enter the proposed Final Judgment and Order of Dismissal with Prejudice submitted herewith; and,

E.    Retain continuing jurisdiction over the implementation, interpretation administration and consummation of the Settlement.

Date: September 18, 2020            EDWARDS POTTINGER LLC

By: */s/ Seth M. Lehrman*
SETH M. LEHRMAN
*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on September 18, 2020, with:

United States District Court CM/ECF system

Notification was sent electronically on September 18, 2020, to:

Honorable James V. Selna
United States District Court
Central District of California

John W. Leardi
Elizabeth A. Rice
Anthony F. Maul
Samuel J. St. Romain

/s/ Seth M. Lehrman, Esq.