Seth M. Lehrman (178303)
seth@epllc.com
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile: 954-524-2822

Ronald J. Eisenberg (*Pro Hac Vice*)
reisenberg@sl-lawyers.com
SCHULTZ & ASSOCIATES LLP
640 Cepi Drive, Suite A
Chesterfield, MO 63005
Telephone: 636-537-4645
Facsimile: 636-537-2599

Attorneys for Plaintiff
Joan Spencer-Ruper, assignee of Retina Associates
Medical Group, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| **JOAN SPENCER-RUPER, assignee of RETINA ASSOCIATES MEDICAL GROUP, INC., individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**ALLIANCEMED, LLC d/b/a ALLIANCEMED and DRAYE TURNER,**<br><br>Defendants. | **Case No.: 8:18-cv-01670-JVS-KES**<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**<br><br>Judge:     James V. Selna<br>Date:        October 19, 2020<br>Time:        1:30 P.M.<br>Courtroom:   10C<br><br>[Filed and Served Concurrently with Declaration of Ronald J. Eisenberg; Declaration of Seth M. Lehrman; and Declaration of Joan Spencer-Ruper] |

1

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3</u>

2
3
4

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, conferred pertaining to the subject matter of the instant motion. Defendant does not oppose this motion.

5
6

Date: September 18, 2020                    **EDWARDS POTTINGER LLC**

7
8
9

By: */s/ Seth M. Lehrman*
        SETH M. LEHRMAN
        Attorney for Plaintiff

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ i

TABLE OF AUTHORITIES ........................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................ 1

I. INTRODUCTION .............................................................. 1

II. STATEMENT OF FACTS ....................................................... 3

A. Factual Background ....................................................... 3

B. Proceeds To Date .......................................................... 3

1. Litigation ............................................................. 3

2. Mediation and Preliminary Approval ................................... 5

III. ARGUMENT ............................................................... 5

A. The Requested Fee Award Is Fair, Reasonable and Justified ........ 5

1. The Settlement resulted from arm's-length negotiations with no collusion ................................................. 6

2. The requested fees are reasonable, fair, and justified under the percentage-of-the-fund method ...................................... 8

a. Class Counsel have obtained excellent results for the Class in comparison to awards made in similar cases ............... 8

b. The risks of litigation support the requested fees ............... 10

c. The skill required and quality of work performed support the requested fees .......................................... 11

d. Class Counsel's undertaking of this Action on a contingency-fee basis supports the requested fees ......... 13

3. The requested fee is reasonable, fair, and justified under the lodestar method .......................................... 14

a. Class Counsel's lodestar is reasonable ........................ 14

b. Class Counsel's hourly rates are reasonable ................... 15

**B. The Requested Costs Are Fair and Reasonable**................................17

**IV. CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE AWARD** ................................................................................................17

**V. CONCLUSION**................................................................................19

## **TABLE OF AUTHORITIES**

**Cases**

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245(N.D. Cal. Mar. 20, 2015) ..18

*Blum v. Stevenson*, 465 U.S. 886 (1994) ................................................15

*Davis v. City and County of San Francisco*, 976 F.3d 1536 (9th Cir. 1992) ..........15

*Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997 (9th Cir. 2002) ...................14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................2, 14

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) .......................................16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..............................................................8

*Hogue v. YRC, Inc.*, No. EDCV 16-01338-CJC(JEMx)(C.D. Ca. June 24, 2019)..18

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .............6

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007)...........17

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996)............17

*In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010) ...............................6

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................. *passim*

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)...............18

*In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act
   (FACTA) Litigation*,  295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) ........................18

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th  Cir. 1994) ................................................................13

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ............................14

*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J.  Sept. 14, 2009) .........7

*Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 391-392 (1970)...............................17

*Pederson v. Airport Terminal Servs.*,
   No. 15-cv-02400, 2018 WL 2138457 (C.D. Cal. Apr. 5, 2018)...........................7

*POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 (C.D. Cal 2008) .16

*Serrano v. Unruh*, 32 Cal. 3d 621 (1982) ..............................................................15

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................6

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)..........................8,10,13

*Wright v. Randstad US, LP,*
  No. SACV 8:13-cv-00815-CJC-AGR (C.D. Ca. Sept. 15, 2016) .......................18

**Statutes**

47 U.S.C. § 227 ...................................................................................... *passim*

**Other Authorities**

2 McLaughlin on Class Actions (8th ed.) ...................................................7

Federal Judicial Center, Manual for Complex Litigation (4th Ed. 2004) .................8

**Rules**

Fed. R. Civ. P. 23(e)(2) ...........................................................................1

Fed. R. Civ. P. 23(h) .........................................................................2, 5, 8

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION**

Plaintiff Joan Spencer-Ruper, assignee of Retina Associates, Inc. ("Plaintiff" or "Retina"), moves for an award of attorneys' fees, litigation costs, and an incentive award as part of this class action settlement with Defendant AllianceMed, LLC d/b/a AllianceMed ("Defendant" or "AllianceMed"), which the Court preliminarily approved.  (ECF No. 78.)

Under the Settlement Agreement ("Settlement"), AllianceMed agrees to establish a $425,000 Settlement Fund to fund (1) Settlement Administration Costs; (2) attorneys' fees, costs, and expenses to Class Counsel, as approved by the Court; (3) an incentive award, if any, to Retina; (4) Class recovery on a pro rata basis up to $500 each to Class Members who submit a Valid Claim Form; and (5) any *cy pres* distribution.  (Settlement (ECF No. 77-1) § 10.35.)  Based on the 90 claims received thus far, each Class Member who submits a valid claim is anticipated to receive $500.[1]  (Chumley Decl. re Settlement Admin. ¶ 17, attached as **Exhibit C**.)

In the preliminary approval motion, Retina indicated that Class Counsel would request a Class Representative Award of $5,000 for Plaintiff and that Class Counsel intended to apply for an award of attorneys' fees of $127,500 (i.e., 30% of the $425,000 Settlement Fund), plus costs and expenses.  (ECF No. 77 at 9.)  On July 16, 2020, the Court granted preliminary approval of the Settlement, after conducting a thorough analysis under Rule 23(e)(2) of the Federal Rules of Civil Procedure 23.  (ECF No. 78 at 2.)

The Court recognized that the Settlement Agreement contained no "clear-sailing" provision as to Class Counsel's compensation, but indicated that because Class Counsel's intended request for 30% of the Settlement Amount exceeds the

---

[1] If the number of valid claims jumps to 540 in the next couple of weeks—which is highly unlikely at this late stage of the claims process—then the estimated $500 payment would only decrease to $486.  (ECF No. 77 at 14, 77-3 at 9.)

Ninth Circuit's benchmark of 25% the Court would need a strong showing that such an award is justified.  (*Id.* at 9.)  The Court directed Class Counsel to provide the relevant information to justify entitlement to their requested fee award, including a lodestar calculation. (*Id.*)  Similarly, the Court explained that because the record did not clearly show the scope of Retina's participation in the action, the Court could not assess the proposed $5,000 payment without more information.  (*Id.* at 10.) Therefore, the Court sought a declaration from Retina supporting the requested award, including Retina's approximate time spent on the case. (*Id.*)

The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  As noted by Plaintiff's Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class, which was approved by this Court, the Settlement resulted from extensive arm's-length negotiations, including mediation sessions in Philadelphia and California. (ECF No. 77 at 12.) The arm's-length negotiations serve as "independent confirmation" of the reasonableness of the Settlement's terms including the attorneys' fees, costs, and incentive award now sought. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Under these circumstances, the Court may give deference to the judgment of the parties regarding the reasonableness of the requested fees.

The reasonableness of the requested fees is also supported by the "percentage of-the-fund" and "lodestar" approach.  The $127,500 in attorneys' fees sought equates to 30% of the $425,000 Settlement Fund, which is only slightly above the Ninth Circuit's benchmark percentage of 25% for attorneys' fee awards in common-fund cases, and this case involved a summary judgment motion, a contested class-certification motion, six depositions, written discovery, mediation in Philadelphia, and mediation with a California mediator, not to mention all of the work done after the parties agreed in theory to settle.  Additionally, as of September 18, 2020, Class

Counsel incurred a combined total of 487.4 hours litigating this action, for a combined lodestar of $271,697.50. Through this brief, which is unopposed by AllianceMed, Retina seeks Court approval of the agreed-upon costs and fees as follows: (1) all settlement administration costs, estimated to be $30,000, to be paid to the Settlement Administrator; (2) attorneys' fees of $127,500; and (3) litigation costs totaling $20,399.64. As more thoroughly stated herein and as detailed in the supporting declarations filed herewith, these sums are fair and reasonable as they resulted from extensive arm's-length negotiations and are further supported by the percentage-of-the-fund and loadstar methodologies.

## II.   STATEMENT OF FACTS

### A.   Factual Background

Retina operated a small, California ophthalmologic practice with its principal place of business in Orange County. (Lehrman Decl. ¶ 26, attached as **Exhibit A**.) AllianceMed is a medical billing and consulting company based in Phoenix, Arizona. (*Id.* ¶ 27.) During the Class Period, AllianceMed sent to telephone facsimile machines 5,394 unsolicited advertisements without proper opt-out notices in connection with its marketing campaign. (*Id.* ¶ 28.) Retina alleged that AllianceMed violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending such fax advertisements that lacked proper opt-out notices and that Retina and the Class are entitled to statutory damages under the TCPA. (*Id.* ¶¶ 29-30; ECF No. 1 at 4-6.) AllianceMed has vigorously denied that it violated the TCPA and has pleaded numerous affirmative defenses. (ECF No. 16 at 6-9.)

### B.   Proceedings to date.

#### 1.   Litigation.

In September 2018, a few months after having received a June 26, 2020 fax advertising medical billing services, Retina filed a Class Action Junk-Fax Complaint, alleging both non-willful and willful violations of the TCPA based on unsolicited facsimile advertisements and seeking $500 per non-willful violation and

$1,500 for each knowing or willful violation.  (ECF Nos. 1 at 12 & 1-1.)  Retina's claim was brought on behalf of a class of individuals who allegedly received from AllianceMed unsolicited facsimile advertisements. (ECF No. 1.)

In December 2018, the parties submitted a joint proposed scheduling plan and elected private mediation.  (ECF No. 15 at 5.)  AllianceMed then answered asserted twenty-four affirmative defenses.  (ECF No. 16 at 6-9.)  The parties also made their initial disclosures.  (Lehrman Decl. ¶ 21.)  They served each other with written discovery requests and, in turn, answered discovery.  (*Id.*; ECF No. 37 at 3.)  They also supplemented their responses.  (Lehrman Decl. ¶ 21.)  AllianceMed produced CSV files identifying the recipients of its fax advertisements.  (Lehrman Decl. ¶ 21; Eisenberg Decl. ¶ 14.)  In June 2019, Retina took five depositions, including a Rule 30(b)(6) deposition.  (Lehrman Decl. ¶ 21; ECF No. 42-3.)  AllianceMed, in turn, deposed Retina's corporate representative.  (Lehrman Decl. ¶ 24; ECF No. 41-3.)

In August 2019, Retina moved for class certification.  (ECF Nos. 35 and 36.)  AllianceMed filed a lengthy opposition.  (ECF No. 41.)  After Retina replied (ECF No. 42) and the Court conducted oral argument (ECF No. 44), the Court granted Retina's motion for class certification in November 2019 (ECF No. 47).

In December 2019, AllianceMed moved for summary judgment or, in the alternative, partial summary judgment.  (ECF No. 55.)  Retina filed an opposition (ECF No. 56), in conjunction with the parties' filing a stipulation to amend the class definition to exclude a small number of class members that were allegedly prior clients of AllianceMed, and to dismiss without prejudice claims against an individual defendant (ECF No. 57).  After AllianceMed filed a summary judgment reply (ECF No. 59) and the Court heard oral argument (ECF No. 61), the Court denied AllianceMed's summary judgment motion while simultaneously amending the class definition on accordance with the parties' stipulation (ECF No. 62).

In February 2020, the parties filed a stipulation for approval of class action notice and proposed using Angeion Group, LLC ("Angeion") to implement the

notice plan.  (ECF No. 63.)  They also filed a joint stipulation to modify pretrial deadlines, including an extension of the settlement discussion deadline.  (ECF No. 64.)  The Court granted both stipulations.  (ECF Nos. 65 and 66.)  In March, the parties each filed motions *in limine*.  (ECF Nos. 67-72.)  Shortly thereafter, the parties filed another stipulation, this time seeking to modify the pretrial deadlines and trial date (ECF No. 73), and the Court granted the stipulation, setting the case for a jury trial on August 11, 2020 (ECF No. 74).

### 2.   Mediation and Preliminary Approval.

The parties twice mediated this case:  once without success and once with success.  In May 2019, the parties engaged in an all-day mediation session in Philadelphia with the Hon. John Hughes (Ret.) of JAMS, but no settlement was achieved at that mediation.  (ECF No. 37 at 3; Lehrman Decl. ¶ 24.)  On April 21, 2020, the parties engaged in video-conferenced mediation before Stacie Feldman Hausner, Esq., in Los Angeles, and this time reached a settlement in theory.  (ECF Nos. 75-76; Lehrman Decl. ¶ 24.)  On June 15, 2020, Retina moved for preliminary approval of the class action settlement and certification of the Settlement Class.  (ECF No. 77.)  On July 16, the Court granted Retina's motion.  (ECF No. 78.)

## III.   ARGUMENT

Class Counsel respectfully assert that (a) the requested fee award of $127,500 is fair, reasonable, and justified, as is (b) payment of $20,399.64 in costs.  (Lehrman Decl. ¶¶ 43-46; Eisenberg Decl. ¶¶ 33-37, attached as **Exhibit B**).

### A.   The Requested Fee Award Is Fair, Reasonable and Justified

The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  As explained by the Ninth Circuit, "[a]ttorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and

reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). In common fund cases, Courts within the Ninth Circuit have discretion to use one of two methods to determine whether the fee request is reasonable: (1) percentage-of-the-fund; or (2) lodestar plus a risk multiplier. *Id.* at 967-68; *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Class Counsel submit that the requested fees are fully supported under both the percentage-of-the-fund and under the lodestar approach, which, due to the amount of work done on this heavily litigated case, would result in a significant *negative* lodestar multiplier.

### 1.    The Settlement resulted from arm's-length negotiations with no collusion

In ensuring that a settlement resulted from arm's-length negotiations with no collusion, courts consider whether the settlement occurred before or after class certification.    *Id.* at 946-47.   Notably, the Settlement here was negotiated *after* Retina had prevailed on a contested class certification motion and *after* Retina had defeated AllianceMed's summary judgment motion.   (ECF Nos. 47, 62.)    In *Bluetooth*, the Ninth Circuit listed subtle signs of collusion:

(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

(2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* at 947 (internal quotation marks and citations omitted).

None of those three signs is present here. First, Class Members who submit valid claims are likely to receive $500 each, the maximum statutory damages for a non-willful and non-knowing violation of the TCPA. *See* 47 U.S.C. § 227(b)(3)(B). (Chumley Decl. ¶ 17.) Second, the Settlement has no clear-sailing arrangement and did not prevent AllianceMed from objecting to this motion. Third, no part of the $425,000 Settlement Fund will revert to AllianceMed, not even uncashed checks to Class Members. (Settlement § 10.35.)

In addition, as the Court noted in the preliminary approval order, the parties participated in two mediation sessions, first in May 2019 before the Honorable John Hughes (retired) of JAMS, and second on April 21, 2020 before Stacie Feldman Hausner, Esq. (ECF No. 78 at 7.) *See Pederson v. Airport Terminal Servs.*, No. 15-cv-02400, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (oversight "of an experienced mediator" reflected noncollusive negotiations); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *see also* 2 McLaughlin on Class Actions, § 6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion"). A settlement was reached in theory during the second mediation and the parties continued negotiations thereafter to agree to the Settlement. (ECF No. 78 at 7.) Moreover, the second mediation was conducted after contested motions for summary judgment and class certification, and after several motions *in limine* had been filed. (*Id.*) The Settlement was not the production of collusion.

### 2. The requested fees are reasonable, fair, and justified under the percentage-of-the-fund method

Courts consider a number of factors to determine the appropriate percentage of the fund to awarding as attorneys' fees in a common fund case including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1048-50 (9th Cir. 2002). The "benchmark" percentage for attorney's fees in the Ninth Circuit is 25% of the common fund with costs and expenses awarded in addition to this amount. *Id.* at 1047. "However, in most common fund cases, the award exceeds that [25%] benchmark." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1998)). Both the *Omnivision* and *Activision* Courts concluded that "Absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Omnivision*, 559 F. Supp. 2d at 1048.

Class Counsel's request for attorneys' fees in the amount of $127,500 equates to 30% of the $425,000 Settlement Fund. The fee request is fully supported by the factors enunciated in *Vizcaino* including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases.

### a. Class Counsel have obtained excellent results for the Class in comparison to awards made in similar cases

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, Manual for Complex Litigation, § 27.71, p. 336 (4th Ed. 2004) ("fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note). Standing alone, this factor supports Class Counsel's fee request.

The Settlement secured by Retina and Class Counsel provides an excellent recovery for Class Members as compared to similar TCPA cases, despite the uncertainty of recovery in TCPA class actions. The Settlement provides for $425,000 in recovery for the Class. Based on the Settlement Administrator's declaration, providing claims data following mailing of the Class Notice, the per-Class Member Settlement Benefit will be $500. (Chumley Decl. ¶ 17.)

The settlement amount to class members is greater than numerous similar TCPA class action settlements which have been approved by courts within the Ninth Circuit and California in particular. Below is a chart of eleven TCPA class action settlements that have received approval, including the value to each proposed class member for the respective case.

| Case and No. | Class Size | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Robles v. Lucky Brand Dungarees, Inc.*, No. 3:10-cv-04846 (NDCA) | 216,000 | $9.9 Million | $100 maximum |
| *Adams v. AllianceOne, Inc.*, No. 08-cv-0248 (SDCA) | 5.63 Million | $9 Million | $40 maximum |
| *Hartman v. Comcast Business Comm'ns*, 2:10-cv-00413-RSL (WDWA) | 148,843 | $3.8 Million | $25.53 maximum |
| *Hovila v. Tween Brands, Inc.*, No. 09-cv-00491-RSL (WDWA) | 100,000 | $5.33 Million Max | $20 Cash; or $45 Gift Certificate |
| *Clark v. Payless Shoesource, Inc.*, No. 09-cv-00915-JCC (WDWA) | 8 Million | $6.25 Million | $25 Gift Certificate |

| Case and No. | Class Size | Settlement Amount | Value per Class Member |
|---|---|---|---|
| *Cubbage v. The Talbots, Inc.*, 09-cv-00911-BHS (WDWA) | 18,000 | $1.44 Million | $80 Gift Certificate ($40 Cash Value) |
| *In Re Jiffy Lube*, No. 3:11-md-02261 | 2.3 Million | $47 Million | $17.29 Gift Certificate ($12.97 Cash Redemption) |
| *Bellows v. NCO Fin*, No. 07-cv-1413-W(AJB) (SDCA) | Unknown, but in the thousands | $950,000 | $70 |
| *Lemieux v. Global Credit & Collection*, 08-cv-1012-IEG(POR) (SDCA) | 27,844 | $505,000 | $70 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (SDCA) | 66,100 | | $100 |
| *Arthur v. Sallie Mae, Inc.*, No. 10-cv-0198, (WDWA) | | $24.15 Million | Between $20 and $40 |

The case at bar was resolved for a sum that represents a far greater payout per valid claim than any of the cases noted above.  This fact strongly supports the fees requested by Retina.

### b.    The risks of litigation support the requested fees

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of

requested fee). AllianceMed has raised twenty-four affirmative defenses, including constitutional challenges. (ECF No. 16 at 7-9.) By going through numerous depositions, then filing a lengthy motion for summary judgment and contesting Retina's original motion for class certification, there is no doubt that AllianceMed has demonstrated its willingness to mount a vigorous defense. (ECF Nos. 41, 41-1 to 41-10, 55, 55-1 to 55-13, 59, 59-1 to 59-4.)   AllianceMed also filed motions *in limine*, including one to exclude the records identifying the numbers to which its faxes were sent.  (ECF Nos. 70-71.)

Although Retina feels strongly about the case's merits, there are costs and risks to continuing the litigation.  All litigation is risky but with the TCPA climate in constant flux, no one can predict the outcome of a case.  If the case were to continue, Retina would need to win at trial, defend the judgment on appeal, and collect the judgment.  In considering the Settlement, Retina and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class including the significant monetary benefit and the deterrent effects it would have.  The Settlement is a compromise avoiding the risk that the Class might not recover and presents a fair and reasonable alternative to continuing to pursue the Action as a class action for alleged violations of the TCPA.  Furthermore, an experienced mediator agreed with the parties. This Court also agreed with the parties' reasoning by preliminarily approving the Settlement. Thus, the risks of continued litigation not only support the Settlement, the great result obtained for the Class also supports the reasonableness of the requested fees.

### c.   The skill required and quality of work performed support the requested fees

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047.  Class Counsel are experienced TCPA class-

action litigators, having litigated more than 120 TCPA class actions nationwide and having been appointed class counsel in many of those cases. (Lehrman Decl. ¶¶ 14, 16; Eisenberg Decl. ¶¶ 7, 11.) They have also successfully defended and prosecuted other types of class actions and have secured noteworthy recoveries for those classes. (Lehrman Decl. ¶¶ 12-17; Eisenberg Decl. ¶¶ 7-8.)  Class Counsel's proven track record and strong reputations demonstrate not only the quality of work performed, but also the skill required to successfully prosecute large complex class actions. (Lehrman Decl. ¶¶ 12-18; Eisenberg Decl. ¶¶ 9-10, 25.)

In the present case, Class Counsel  (a) conducted an extensive investigation into the underlying facts prior to bringing the action; (b) evaluated available causes of action, including not only the TCPA but others; (c) thoroughly researched class members' claims and available defenses; (d) prepared a detailed and lengthy class-action complaint; (e) propounded written discovery; (f) answered written discovery; (g) took five depositions; (h) prepared Retina for, and defended, the deposition of Retina's corporate representative; (i) travelled to Philadelphia to mediate the case; (j) thorough briefed, orally argued against, and defeated AllianceMed's motion for summary judgment; (k) thorough briefed, orally argued for, and obtained a favorable ruling on Retina's contested motion for class certification; (l) researched, prepared, and filed four motions *in limine*; (m) mediated the case a second time with a California mediator; (n) prepared the motion for preliminary approval of the settlement and the attachments; (o) drafted the settlement agreement and exhibits; (p) evaluated potential settlement administrators; (q) investigated *cy pres* recipients; (r) oversaw the notice and claims administration process; (s) prepared this motion and the supporting declarations; (t) prepared the motion for final approval of class action settlement; (u) regularly communicated with Retina; (v) communicated with the settlement administrator; and (w) communicated with opposing counsel (Lehrman Decl. ¶¶ 21-25, 43; Eisenberg Decl. ¶¶ 14-18. 32.)

Thus, Class Counsel's skill, diligence, and expertise played significant roles in the parties' reaching a settlement, and therefore support the requested fees.

### d. Class Counsel's undertaking of this case on a contingency-fee basis supports the requested fees

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose"); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses knowing that Class Counsel would only receive a fee if there were a recovery. (Eisenberg Decl. ¶ 38.)  In pursuit of this litigation, Class Counsel have spent considerable outlays of time and money.  (*See* supra, § III.A.2.c; Lehrman Decl. ¶¶ 42-44, 46; Eisenberg Decl. ¶¶ 31, 32, 34, 35, 37, 39.)

As of September 18, 2020, Class Counsel have incurred $20,399.64 in expenses and costs and have spent 487.4 hours litigating this action. (Lehrman Decl. ¶¶ 42-44 & Ex. B; Eisenberg Decl. ¶¶ 32, 37 & Ex. A.)  Thus, Class Counsel's "substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees" in this matter. *Omnivision*, 559 F. Supp. 2d at 1047.  As articulated above, the percentage-of-the-fund method is the preferred and most widely used method for determining attorneys' fees in a common fund case.  The requested fees are fully supported by the factors enunciated by *Vizcaino*

and are commensurate with the excellent result obtained for the Class, which is comparable or in excess of settlements in other TCPA cases, as discussed *supra*.

### 3. The requested fee is reasonable, fair, and justified under the lodestar method

While the requested fees are fully supported by the percentage-of-the-fund method, the application of that method is optional and may be applied at the Court's discretion. A court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050. Such a cross-check will confirm that a fee award of 30% of $425,000, i.e., $127,500, is reasonable, fair, and justified.

The first step in the lodestar-multiplier approach is to multiply the number of hours counsel reasonably expended by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may then adjust that figure based upon its consideration of many of the same "enhancement" factors considered in the percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of the other employment due to acceptance of the case; and, (5) the experience, reputation, and ability of the attorneys. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[2]

#### a. Class Counsel's lodestar is reasonable

The accompanying declarations of Class Counsel show the hours of work and billing rates used to calculate their lodestar. A summary follows:

---

[2] The risk inherent in contingency representation is a critical factor. The Ninth Circuit stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier when . . . there is evidence that the case was risky." *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002).

| NAME | HOUR INCURRED | RATE | TOTAL |
|---|---|---|---|
| EDWARDS POTTINGER, LLC[3] | 145.1 | $575 | $83,432.50 |
| RONALD J. EISENBERG | 342.3 | $550 | $187,953.00 |
| **TOTAL COMBINED LODESTAR** | 487.4 | | $271,697.50 |

(Lehrman Decl. ¶ 42; Eisenberg Decl. ¶ 35.)  Class Counsel have devoted a total of 487.4 hours to this litigation as of September 18, 2020, and have a total lodestar of $271,697.50, which represents a negative multiplier of 2.13. These amounts do not yet include an estimate of the additional time that Class Counsel will spend going forward in seeking final approval of, and implementing the Settlement, including assisting Class Members and overseeing claims administration.

Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having two firms working on this case.  Tasks were reasonably divided among firms to ensure avoiding the replication of work.[4]  Thus, Class Counsel's lodestar is reasonable.

### b.    Class Counsel's hourly rates are reasonable

Similarly, Class Counsel's hourly rates are also reasonable.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stevenson*, 465 U.S. 886, 895 n.11 (1994); *see also Davis v. City and County of San Francisco*, 976 F.3d 1536, 1546 (9th Cir. 1992); *Serrano v. Unruh*, 32 Cal. 3d 621, 643 (1982). As demonstrated in their declarations, Class Counsel are each experienced, highly

---

[3] Paralegal Iris Zambrano of the Edwards Pottinger firm also expended 31.9 hours of time on this case which is not reflected in this table.

[4] Hours for paralegals and support staff are recoverable, but were zeroed for purposes of this motion.

regarded bar members with extensive expertise in the area of class actions and complex litigation like the one here.

According to the well-respected Laffey Matrix, reasonable hourly rates for a partner of a law firm practicing 8-10 years is $672, 11-19 years is $759, and 20+ years is $914.   http://www.laffeymatrix.com/see.html (last visited Sept. 15, 2020). Class Counsel each have 20+ years of legal experience.

Mr. Lehrman, who began practicing law in California in 1995, has dedicated his career to complex civil litigation matters and consumer protection litigation, including class action litigation under the TCPA and other class actions, in state and federal courts in Florida, California, and across the United States.  (Lehrman Decl. ¶¶ 3-4, 11.)  Mr. Lehrman has represented individuals and businesses in class action and whistleblower cases to holding corporate wrongdoers accountable.  He was class counsel and trial counsel in a class action against an entity that does business as Trump National Golf Club–Jupiter, *Hirsch v. Jupiter Golf Club*, LLC, 2017 WL 448952 (S.D.Fla. Feb. 1, 2017).  In *Hirsch*, he and his firm deposed Donald Trump and Eric Trump and won a multi-million-dollar trial verdict.  (*Id.* ¶ 12.) Thus, the billing rate for Mr. Lehrman of only $575 per hour is well within the normal range of fees charged by firms for partner work.[5]

Additionally, Mr. Eisenberg, who has contributed substantially to this litigation, has litigated more than 120 TCPA class actions in federal and state courts and has been appointed lead counsel numerous times, including recently in a large TCPA case. (Eisenberg Decl. ¶ 7, 33.) *See BPP v. Brasseler U.S.A. Dental*, No. 1611-CC00730-01 (St. Charles County Cir. Ct. Jan. 11, 2019) (appointed lead counsel and achieved $4.9 million settlement nationwide TCPA junk-fax class

---

[5] *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 643-44 (S.D. Cal. 2011), *aff'd in part*, 473 F. Appx. 716 (9th Cir. 2012) (approving hourly rates of $675-795 for partners, up to $410 for associates, and up to $345 for paralegals); *see also POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 at *4 (C.D. Cal 2008) (finding partner rates of $750 to $475 reasonable).

action).  Thus, the billing rate for $550 per hour for Mr. Eisenberg, an attorney with 21 years of experience, is justified.  (*Id.* ¶¶ 4, 33.)

Hence, Class Counsel's combined lodestar of $271,697.50, which far exceeds the $127,500 requested, is reasonable and supports the requested attorneys' fees.

### B.    The Requested Costs and Expenses Are Fair and Reasonable

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)). The litigation costs and expenses Class Counsel incurred in this case were necessary to secure the resolution of this litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation). Based upon the discussion herein, Class Counsel believe that the costs and expenses incurred in this matter are fair and reasonable.

Throughout this litigation, Class Counsel had to incur costs totaling $20,399.64.  (Lehrman Decl. ¶ 44 ($15,498.50); Eisenberg Decl. ¶ 37 ($4,901.14).) These expenditures were necessary to secure the resolution of this litigation and Class Counsel put forward said costs without assurance that they would ever be repaid.  In light of the expenses Class Counsel were required to incur to bring this case to its current settlement posture, their request for costs is reasonable.  And Class Counsel will may incur further costs bringing the case to conclusion.

## IV.    CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE AWARD

Retina requests a $5,000 Class Representative or Incentive Award for the work it performed on the Class's behalf and the substantial benefit it helped the Class receive. District courts in California have opined, in many cases, that a class

representative or incentive award of $5,000 is presumptively reasonable. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. Mar. 20, 2015) (finding that "[i]n this district, a $5,000 payment is presumptively reasonable"); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942-43 (9th Cir. 2015); *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. Jan. 17, 2014). Some cases have resulted in such awards in excess of $5,000. *See Hogue v. YRC, Inc.*, No. EDCV 16-01338-CJC(JEMx) (C.D. Ca. June 24, 2019) (awarding $10,000); *Wright v. Randstad US, LP*, No. SACV 8:13-cv-00815-CJC-AGR (C.D. Ca. Sept. 15, 2016) (awarding lead plaintiffs $10,000 and $5,000).

Retina's meaningful and active contribution to this litigation and the lack of any opposition to such an award demonstrate its reasonableness. (Spencer-Ruper Decl. ¶ 9, attached hereto as **Exhibit D**.) Retina likely could have settled the case individually for more than $5,000. (*Id.* ¶ 10.) Had Retina done so, the Class Members would have received nothing. Retina has engaged in regular telephone communications with counsel, engaged in regular email communications with counsel, reviewed and approved the complaint, reviewed Retina's initial disclosures, assisted in responding to AllianceMed's interrogatories, assisted in responding to AllianceMed's requests for production of documents, including numerous communications with third parties to obtain documents, made itself available by telephone during the first mediation in Philadelphia, prepared for and attended its own deposition; obtained information to supplement Retina's discovery responses, reviewed and edited the Declaration of Joan-Spencer Ruler in Support of Plaintiff's Motion for Class Certification; reviewed the briefing documents on Plaintiff's Motion for Class Certification; reviewed the briefing documents on Defendants' motion for summary judgment; communicated with counsel regarding for scheduling two mediations, deposition, and trial; reviewed documentation from Settlement Administrator; prepared for and participated in Zoom mediation in Los

Angeles; reviewed Settlement Agreement; reviewed documents filed in support of motion for preliminary approval of class action settlement; reviewed documents to be filed in support of motions for final approval of class action settlement and for attorneys' fees and incentive award, including the supporting Declaration of Joan-Spencer Ruper. (*Id.* ¶ 9.) Retina acted dutifully as a class representative and should be awarded the requested $5,000 for its vital part in the litigation.

## V. **CONCLUSION**

Class Counsel respectfully request that the Court grant this motion and award them award of attorneys' fees of $127,500 (30% of the Settlement Fund) and litigation costs of $20,399.64, and award Retina an incentive award of $5,000.

Date: September 18, 2020                    EDWARDS POTTINGER LLC

                                            By: */s/ Seth M. Lehrman*
                                                SETH M. LEHRMAN
                                                *Attorney for Plaintiff*

### **CERTIFICATE OF SERVICE**

Filed electronically on September 18, 2020, with:

United States District Court CM/ECF system

Notification was sent electronically on September 18, 2020, to:

Honorable James V. Selna
United States District Court
Central District of California

John W. Leardi
Elizabeth A. Rice
Anthony F. Maul
Samuel J. St. Romain

                            /s/ Seth M. Lehrman, Esq.

---