1

2                                                    JS-6

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11   JOAN SPENCER-RUPER, assignee of       Case No. 8:18-cv-01670-JWH-KESx
     RETINA ASSOCIATES
12   MEDICAL GROUP, INC.,
     individually and on behalf of all     **ORDER GRANTING PLAINTIFF'S**
13   others similarly situated,            **MOTION FOR FINAL APPROVAL**
                                           **OF CLASS SETTLEMENT [ECF**
14             Plaintiffs,                  **No. 80] and MOTION FOR**
                                           **ATTORNEYS' FEES, COSTS, AND**
15        v.                                **INCENTIVE AWARD [ECF No. 81]**

16   ALLIANCEMED, LLC,

17             Defendant.

18

19

20

21

22

23

24

25

26

27

28

Before the Court are two related motions filed by Plaintiff Joan Spencer-Ruper, individually and on behalf of all others similarly situated:  (1) the Motion for Final Approval of Class Settlement,[1] and (2) the Motion for Attorneys' Fees, Costs, and Incentive Award[2] (jointly, the "Motions").  The Motions are not opposed.  The Court held a hearing on the Motions on November 19, 2020.  After considering the papers filed in support of the Motions,[3] and the arguments of counsel at the hearing on the Motions, the Court orders that the Motions are **GRANTED**, as explained herein.

## I.  BACKGROUND

### A.    Procedural History

Retina Associates Medical Group, Inc., filed its Complaint commencing this action on September 14, 2018.  Retina asserts, individually and on behalf of a purported class, one claim for relief under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").[4]  On June 20, 2020, Retina assigned its claim to Joan Spencer-Ruper,[5] and on September 18, 2020, Spencer-Ruper was substituted as Plaintiff in place of Retina.[6]

In its Complaint, Retina alleges that on June 26, 2018, it received an unsolicited fax advertisement from Defendants AllianceMed, LLC and Draye Turner.  That fax advertisement lacked a proper opt-out notice.[7]  Retina also

---

[1]    Pl.'s Mot. for Final Approval of Class Action Settlement (the "Final Approval Motion") [ECF No. 80].

[2]    Pl.'s Mot. for Attorneys' Fees, Costs, and Incentive Award (the "Fees Motion") [ECF No. 81].

[3]    The Court considered the following papers:  (1) Compl. [ECF No. 1]; (2) the Final Approval Motion (including its attachments); and (3) the Fees Motion (including its attachments).

[4]    *See generally* Compl.

[5]    Joint Stipulation for Substitution of Party Under Fed. R. Civ. P. 25(c) (the "Stipulation Re Substitution") [ECF No. 79], ¶ 7 & Ex. A (Assignment) [ECF No. 79-1].

[6]    Order Granting Stipulation Re Substitution [ECF No. 82].

[7]    Compl. ¶¶ 28 & 29 & Ex. A [ECF No. 1-1].

alleges that for the past four years AllianceMed and Turner have systematically, pursuant to a policy and procedure, arranged to transmit hundreds or thousands of such unsolicited fax advertisements lacking compliant opt-out notices to recipients such as Retina and the purported class members.[8]

On November 18, 2019, the Court certified a class against AllianceMed.[9] The Court appointed Retina as class representative and appointed the law firm of Edwards Pottinger LLC as class counsel ("Class Counsel").[10]  On January 16, 2020, the Court granted a stipulation for the dismissal of Retina's claims against Turner, and the Court subsequently amended the Class definition to exclude 44 alleged AllianceMed clients.[11]  Consequently, the operative class definition (the "Settlement Class") is as follows:

> All persons or business entities in the United States who in June 2018, as identified in AllianceMed's fax transmission records produced as CSV files, were successfully sent through Openfax an[] unsolicited fax advertisement by or on behalf of AllianceMed, but will exclude the 44 AllianceMed clients as stipulated by the parties. Excluded from the Class are the forty-four (44) clients of AllianceMed, from whom AllianceMed obtained prior express consent to send facsimile advertisements.  The forty-four AllianceMed clients who are excluded from the Class are listed on the Exclusion List attached to the Notice.[12]

---

[8]    *Id.* at ¶ 16.

[9]    Order Regarding Mot. for Class Certification [ECF No. 47].

[10]    *Id.*

[11]    Order Granting Stipulation for Dismissal of Pl.'s Claims against Def. Draye Turner and to Am. Class Definition [ECF No. 58].

[12]    Order Granting Stipulation for Approval of Class Action Notice [ECF No. 66].

On February 12, 2020, the Court denied AllianceMed's motion for summary judgment against Retina.[13]  After participating in two private mediation sessions in May 2019 and April 2020, the parties reached an agreement to settle the class claims.[14]  On July 16, 2020, the Court granted preliminary approval of the settlement and directed Retina to disseminate notice to the Settlement Class.[15]

Spencer-Ruper now moves for final class certification and final approval of the Settlement, as well as attorneys' fees, costs, and an incentive award.

**B.** **Summary of Class Settlement Agreement**

**1.** **The Settlement Class**

The Settlement Agreement defines the Settlement Class as follows:

> All persons or business entities in the United States who in June 2018, as identified in AllianceMed's fax transmission records produced as CSV files, were successfully sent through Openfax an unsolicited fax advertisement by or on behalf of AllianceMed, but will exclude the 44 AllianceMed clients as stipulated by the parties. Also excluded from the Class are Defendant, its employees, agents, and members of the judiciary.[16]

There are 5,394 members of the Settlement Class (the "Class Members").[17]

---

[13]   Order Regarding Mot. for Summ. J. [ECF No. 62].

[14]   *See* Settlement Agreement [ECF No. 77-1].

[15]   Order Regarding Mot. for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order") [ECF No. 78], at 14.

[16]   Settlement Agreement ¶ 10.7.

[17]   Decl. of **Error! Main Document Only.**Ronald J. Eisenberg in Supp. of Pl.'s Mot. for Preliminary Approval of Class Action Settlement ("Eisenberg Decl.") [ECF No. 77-3], ¶ 28.

### 2.  **Settlement Amount**

AllianceMed agrees to establish a $425,000 settlement fund in consideration for the settlement and release of claims.[18]  The fund will pay for: (1) Settlement Administration Costs; (2) attorneys' fees, costs, and expenses to Class Counsel, as approved by the Court; (3) a class representative award, if any, to the representative plaintiff; (4) class recovery on a *pro rata* basis up to $500 for each Class Member who submits a valid claim form; and (5) any *cy pres* distribution to the proposed *cy pres* recipient, Medical Aid for Children of Latin America, Inc. ("MACLA").[19]  AllianceMed will make installment payments via Automated Clearing House ("ACH") to the Settlement Administrator over 30 consecutive months, from June 1, 2020, to December 1, 2022, to finance the settlement fund from which the notice and administrative costs will be paid.[20]

### 3.  **Class Notice**

On June 25, 2020, the Settlement Administrator, Angeion Group, LLC,[21] mailed notice of the settlement to the U.S. Attorney General and the Attorneys General for all 50 states and territories, as required under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715 (the "CAFA Notice").[22]  Class Counsel did not receive any communications from any recipient of the CAFA Notice.[23]

---

[18]  Settlement Agreement ¶ 10.35.

[19]  *Id.*

[20]  *Id.* at ¶¶ 10.35, 13.5, 13.6, & 15.2.

[21]  *See* Order Granting Stipulation for Approval of Class Action Notice [ECF No. 66].

[22]  Decl. of Ryan Chumley Regarding Settlement Administration (the "Chumley Decl.") [ECF No. 80-3], ¶ 5.

[23]  Decl. of Ronald J. Eisenberg in Supp. of Pl.'s Mot. for Final Approval of Class Action Settlement (the "Second Eisenberg Decl.") [ECF No. 80-2], ¶ 45.

With respect to class notice, Angeion identified 3,754 Class Members with a known mailing address.[24]  On August 5, 2020, Angeion mailed the Settlement Notice and Claim form (the "Notice") via United States Postal Service ("USPS") First Class mail to the Class Members with an identified mailing address.[25]  The USPS returned 332 of the initial notices as undeliverable, with three identified as having a forwarding address.[26]  Angeion re-mailed the Notice to the three Class Members with a forwarding address.[27]  Of the 329 Notices returned as undeliverable, Angeion located new address information for 152 of the Class Members, and Angeion re-mailed the Notice to these Class Members.[28]  None of the 155 Notices that were re-mailed has been returned by the USPS.[29]

Furthermore, in compliance with the Preliminary Approval Order, Angeion established a Settlement Website, www.medicalfaxsettlement.com.[30]  Through this website, visitors have access to frequently asked questions as well as important case documents such as the Notice.[31]

### 4.   Release

The Settlement Agreement provides that Class Members who do not request exclusion will be deemed to have released claims arising out of the unsolicited fax advertisements sent by AllianceMed during the class period.[32]

---

[24]   Chumley Decl. ¶¶ 6–8.

[25]   *Id.* at ¶ 9 & Ex. B.

[26]   *Id.* at ¶ 10.

[27]   *Id.*

[28]   *Id.*

[29]   *Id.*

[30]   *Id.* at ¶ 11.

[31]   *Id.*

[32]   Settlement Agreement ¶¶ 18.1 & 18.4.

-6-

### 5.   Opt-Out and Objections

The Settlement Agreement provides a mechanism for Class Members to opt-out or object to the Settlement Agreement.[33]  Class Members had until October 4, 2020, to opt-out or object to the Settlement Agreement.[34]  No Class Members have exercised their right to opt-out or object to the Settlement Agreement.[35]

### 6.   Class Representative Award

Class Counsel seeks an award of $5,000 for the class representative.[36] The Settlement Agreement does not contain a "clear sailing" provision concerning the incentive award (*i.e.*, the defendant has the right to object to the plaintiff's request for fees, costs, and an incentive award).[37]

### 7.   Attorneys' Fees and Costs

The Settlement Agreement provides that Class Counsel may seek an award of attorneys' fees and costs, not to exceed 30% of the class settlement amount.[38]  The Settlement Agreement does not contain a "clear sailing" provision concerning the request for attorneys' fees and costs.[39]  Class Counsel now moves for an award of attorneys' fees in the total amount of $127,500 and costs and expenses of $20,399.64.[40]

### 8.   *Cy Pres* Distribution

Under the terms of the Settlement Agreement, a *cy pres* distribution will occur only if there are funds remaining after payments for (1) settlement

---

[33]   *See id.* at ¶ 12.6.
[34]   *Id.*; *see also* Chumley Decl. ¶¶ 13 & 14.
[35]   Chumley Decl. ¶¶ 14 & 15.
[36]   Settlement Agreement ¶ 13.6.
[37]   *Id.*
[38]   *Id.* at ¶ 13.5.
[39]   *Id.*
[40]   *See* Fees Motion 3:4–6.

administration costs; (2) attorneys' fees, costs, and expenses; (3) the class representative award; and (4) a class recovery up to $500 on a *pro rata* basis for class members who submit a claim form.[41]  As of October 20, 2020, Angeion has received 133 timely Claim Forms.[42]  After deducting Angeion's administration fees (estimated to be $30,000), Class Counsel's requested fees and costs (totaling $147,899.64), and the requested incentive award of $5,000, there remains approximately $242,100.36 to distribute to the Class Members and to MACLA.[43]  Based upon the number of claims filed, each Class Member who submitted a claim will receive $500 from the settlement fund, and the remaining settlement funds will be distributed to MACLA.[44]

## II.  DISCUSSION

## A.    Final Certification of the Settlement Class

Final certification of a class for settlement purposes requires a determination that the requirements of Rule 23 of the Federal Rules of Civil Procedure are met.  Certification requires that all four elements of Rule 23(a) and at least one prong under Rule 23(b) are satisfied.  The Court examines each requirement to determine whether the Class can be certified for purposes of the Settlement Agreement.

### 1.    The Settlement Class Satisfies the Requirements Under Rule 23(a)

Rule 23(a) imposes four prerequisites for class actions:  (1) the class is so numerous that a joinder of all members is impracticable (*i.e.*, numerosity); (2) there are questions of law or fact common to the class (*i.e.*, commonality);

---

[41]    Settlement Agreement ¶¶ 10.35.2 & 15.3.

[42]    *See* Notice of Filing Supp. Decl. of Ryan Chumley [ECF No. 88]; Supp. Decl. of Ryan Chumley [ECF No. 88-1] ¶ 3.

[43]    2d Eisenberg Decl. ¶ 22.

[44]    Final Approval Mot. 7:15–21.

1    (3) the claims or defenses of the representative parties are typical of the claims

2    or defenses of the class (*i.e.*, typicality); and (4) the representative parties will

3    fairly and adequately protect the interests of the class (*i.e.*, adequacy).

4    Fed. R. Civ. P. 23(a); *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied*

5    *Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802,

6    806 (9th Cir. 2010).

7          The Court previously certified a class in this action after a contested

8    Motion for Class Certification.[45]  The Settlement Class is the same as the class

9    previously certified by the Court.[46]  Accordingly, the Court finds it unnecessary

10   to reiterate the class action prerequisites under Rule 23(a).

11        **2.**    **The Settlement Class Meets the Requirements Under**

12              **Rule 23(b)**

13        In addition to the requirements under Rule 23(a), the Settlement Class

14   must also satisfy at least one of the requirements pursuant to Rule 23(b).  Under

15   Rule 23(b)(3), a plaintiff must show (1) that common factual and legal issues

16   predominate over individual questions; and (2) that a class action is a superior

17   method to resolve the class claims.  Fed. R. Civ. P. 23(b)(3).  Courts consider

18   the following factors in evaluating whether a class satisfies Rule 23(b):  (1) the

19   class members' interest in individually controlling the prosecution or defense of

20   separate actions; (2) the extent and nature of any litigation concerning the

21   controversy already begun by or against class members; (3) the desirability or

22   undesirability of concentrating the litigation of the claims in the particular

23   forum; and (4) the likely difficulties in managing a class action.

24   Fed. R. Civ. P. 23(b)(3)(A)–(D).  Here, for the reasons explained in detail in the

25

26   [45]    *See* Order Regarding Mot. for Class Certification [ECF No. 47]; Order
     Granting Stipulation for Approval of Class Action Notice (the "<u>Class</u>
27   <u>Certification Order</u>") [ECF No. 66].

28   [46]    *Compare* Order Granting Stipulation for Approval of Class Action Notice
     [ECF No. 66], *with* Settlement Agreement ¶ 10.7.

Class Certification Order, the Court finds that common factual and legal issues predominate over individual questions and that a class action is a superior method to resolve the class claims.

### a. Common Factual and Legal Issues Predominate Over Individual Questions

To meet the predominance requirement, common questions must be so significant that a single lawsuit resolves all of the issues in dispute for all of the class members. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017). The predominance inquiry is a rigorous analysis, and it presumes that commonality exists. *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 633 (N.D. Cal. 2014).

For the reasons explained in the Class Certification Order, the Court finds that common questions of law and fact predominate over individual questions.[47]

### b. A Class Action Is a Superior Method to Resolve the Class Claims

For the reasons explained in the Class Certification Order, the Court finds that a class action is a superior method to resolve the TCPA claims.[48]

If each Class Member filed an individual action, then each would need to prove the same wrongdoing by AllianceMed, using the same evidence. The resolution of these claims through a class action avoids the inefficiency of repetitious litigation and the potential risk of inconsistent rulings. Additionally, individual litigation of each claim is unrealistic, because it would impose extraordinary burdens on the parties. *See Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 210 (N.D. Cal. 2009) (finding class action superior where "[t]he

---

[47] *See* Class Certification Order 10–12.

[48] *See id.* at 12–13.

alternative—hundreds or even thousands of individual actions—is not realistic"). Further, the amount in dispute for individual Class Members, balanced against the need for expert testimony and other costs, is too small to make litigation cost effective. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (affirming district court's order finding class action superior where the "individual damages . . . [were] too small to make litigation cost effective in a case against funded defenses and with a likely need for expert testimony"). Moreover, Class Members were provided with an option to opt-out of the Settlement Agreement and to pursue a separate action individually, although no Class Member chose to opt-out.

### 3.     The Settlement Class Meets the Notice Requirements Under Rule 23(c)(2)(B)

Under Rule 23(c)(2)(B), "for any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) further states that the notice may be made by one of the following:  United States mail, electronic means, or another type of appropriate means. *Id.*

> The notice must clearly and concisely state in plain, easily understood language:  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The Court previously found that the Class Notice clearly and adequately conveyed all relevant information regarding the proposed Settlement, as required by Rule 23(c)(2)(B), and directed that the Notice be served upon the Class Members.[49]  The Settlement Administrator mailed the Notice, via USPS First Class Mail, within 20 days of the date of entry of the Preliminary Approval Order.[50]  The Settlement Administrator also created a Settlement Website that contained the Notice.[51]  Accordingly, the Court finds that the Settlement Class received requisite notice under Rule 23(c)(2)(B).

**B.    Final Approval of Class Settlement**

Rule 23 provides that "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).  The decision to approve a class action settlement is "committed to the sound discretion of the trial judge," *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), who must examine the settlement to determine if it is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2).  Here, the Court finds that the Settlement Agreement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(2).

In determining whether a class settlement is "fair, reasonable, and adequate," a district court must consider the following factors:

(A)    the class representatives and class counsel have adequately represented the class;

---

[49]    Preliminary Approval Order 13.
[50]    Chumley Decl. ¶¶ 9 & 10.
[51]    *Id.* at ¶ 11.

1    (B)    the proposal was negotiated at arm's length;

2    (C)    the relief provided for the class is adequate, taking into

3    account:

4            (i)    the costs, risks, and delay of trial and appeal;

5            (ii)    the effectiveness of any proposed method of

6            distributing relief to the class, including the method of

7            processing class-member claims;

8            (iii)    the terms of any proposed award of attorneys' fees,

9            including timing of payment; and

10           (iv)    any agreement required to be identified under

11           Rule 23(e)(3); and

12    (D)    the proposal treats class members equitably relative to each

13    other.

14    Fed. R. Civ. P. 23(e)(2).  The goal of Rule 23(e)(2), as amended in 2018, "is . . .

15    to focus the [district] court and the lawyers on the core concerns of procedure

16    and substance that should guide the decision whether to approve the proposal."

17    Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  A court must review the

18    entire settlement agreement, as a whole, for overall fairness.  *Staton v. Boeing*

19    *Co.*, 327 F.3d 938, 960 (9th Cir. 2003).

20    **1.    Adequacy of Representation by Class Representatives and**

21    **Class Counsel**

22    Under Rule 23(e)(2)(A), the first factor to be considered is whether the

23    class representatives and class counsel have adequately represented the class.

24    This analysis includes, for example, "the nature and amount of discovery"

25    undertaken in the litigation, or "the actual outcomes of other cases."

26    Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Comm. Notes.

27

28

The parties conducted written discovery, including the production of supplemental responses.[52]  Before assigning its claim to Spencer-Ruper, Retina took five depositions, including a Rule 30(b)(6) deposition, and AllianceMed deposed Spencer-Ruper as Retina's corporate representative.[53]  Class Counsel has extensive experience in litigating class actions and particular expertise in consumer protection and TCPA litigation.[54]

Because Retina, Spencer-Ruper, and Class Counsel have adequately represented the Class, this factor weighs in favor of approval.

## 2.   Negotiated at Arm's Length

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B).  As with the preceding factor, this factor can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests."  Fed. R. Civ. P. 23(e)(2)(B), 2018 Advisory Committee Notes.

Here, the parties participated in two mediation sessions with neutral mediators—the first in May 2019 before the Honorable John Hughes (retired) of JAMS, and the second in April 2020 before Stacie Feldman Hausner, Esq.[55]  A settlement was reached in principle during the second mediation, and the parties

---

[52]   Decl. of Seth Lehrman in Supp. of Pl.'s Mot. for Final Approval of Class Action Settlement (the "Lehrman Decl.") [ECF No. 80-1], ¶ 21.

[53]   Id.

[54]   Id. at ¶¶ 11–19; Second Eisenberg Decl. ¶¶ 6–13.

[55]   Lehrman Decl. ¶ 24.

-14-

1    continued negotiations after that session to finalize the settlement.[56]

2    Furthermore, the second mediation was conducted after contested motions for

3    summary judgment and class certification and after the parties filed several

4    motions *in limine*.[57]

5        The Court is confident that the parties engaged in an arm's length

6    negotiation.  Therefore, the Court finds that the settlement is not a product of

7    collusion.

8        **3.    Adequacy of Relief Provided for the Class**

9        The third factor is whether "the relief provided for the class is adequate,

10   taking in to account:  (i) the costs, risks, and delay of trial and appeal; (ii) the

11   effectiveness of any proposed method of distributing relief to the class, including

12   the method of processing class-member claims; (iii) the terms of any proposed

13   award of attorneys' fees, including timing of payment; and (iv) any agreement

14   required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).

15   Under this factor, the relief "to class members is a central concern."

16   Fed. R. Civ. P. 23(e)(2)(C), 2018 Advisory Comm. Notes.

17       **a.    Costs, Risks, and Delay of Trial and Appeal**

18       "A[] central concern [when evaluating a proposed class action settlement]

19   . . . relate[s] to the cost and risk involved in pursuing a litigated outcome."

20   Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  In this regard, the test of

21   a settlement is not the maximum amount that the plaintiffs might have

22   recovered, but, rather, whether the settlement is within a reasonable range.  *See*

23   *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965–66 (9th Cir. 2009)

24   ("district judges naturally arrive at a reasonable range for settlement by

25

26

27   —————————————————
     [56]    *Id.*

28   [57]    *See id.* at ¶¶ 22–24.

considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value").

Spencer-Ruper and Class Counsel balanced the risk of continuing with protracted and contentious litigation against the benefits to the class in supporting the settlement and concluding that it is fair, reasonable, and adequate in their experience with TCPA class actions.[58]  Spencer-Ruper additionally recognizes the various costs and risks of continuing the litigation.[59]  Furthermore, although AllianceMed may have strong defenses, a loss at trial could result in damages that are significantly higher than the settlement amount.[60]  Indeed, if Spencer-Ruper prevails at trial, the judgment "could be $2,697,000 or up to treble that number if Spencer-Ruper were able to prove that AllianceMed's violations were done willfully or knowingly."[61]  *See* 47 U.S.C. § 227(b)(3).  In view of the uncertainty of further contentious litigation and the continued expenses associated therewith, the Court finds that the $425,000 Settlement (minus deductions) constitutes adequate relief.

**b.**     **<u>Effectiveness of Proposed Method of Relief Distribution</u>**

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Fed. R. Civ. P. 23(e)(2)(C).  "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims."  Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes.  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  *Id.*

---

[58]     Lehrman Decl. ¶ 35; 2d Eisenberg Decl. ¶ 44.

[59]     Final Approval Mot. 11:15–28.

[60]     *Id.* at 11:20–28.

[61]     *Id.* at 11:20–24.

The Settlement Administrator provided notice via USPS First Class Mail to Class Members.[62]  The Class Claim Form was also made available on the Settlement Website, and claims could be submitted online.[63]  To be valid, the Claim Form was required to be substantially completed, timely, and correct.[64]  The settlement will be distributed via checks mailed to the address provided by the Class Member on his or her valid Claim Form.[65]  Having reviewed the Claim Form,[66] the Court finds that this process is not unduly demanding and that the proposed method of distributing relief to the Class Members is effective.

### c.   Terms of Proposed Award for Attorneys' Fees

Third, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c).  The Settlement Agreement contains a no "clear-sailing" provision with respect to Class Counsel's compensation, meaning that Class Members could object to Class Counsel's request for fees.  Furthermore, Class Counsel will not receive payment before the Class Members.[67]  Class Counsel seeks compensation of 30% of the Settlement Amount, which exceeds the Ninth Circuit benchmark of 25%.  However, for the reasons discussed in more detail below, the Court finds that Class Counsel has made a sufficient showing that the requested fee award is fair and reasonable.

### d.   Agreement Identification Requirement

The Court must also evaluate any agreement made in connection with the proposed Settlement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3).  Here, the

---

[62]   Chumley Decl. ¶ 10; *see also* Settlement Agreement ¶ 12.2.

[63]   Chumley Decl. ¶ 11; *see also* Settlement Agreement ¶ 12.9.

[64]   Settlement Agreement ¶ 10.40.

[65]   *Id.* at ¶¶ 15.6 & 16.

[66]   Chumley Decl., Ex. B (Claim Form).

[67]   Settlement Agreement ¶ 15.3.

-17-

Settlement Agreement presently before the Court is the only agreement. Thus, the Court need not evaluate any additional agreements outside of the Settlement Agreement.

Based upon the foregoing, given the risk and expense of further litigation and the effectiveness of the method of distribution, the Court finds that the $425,000 Settlement (less deductions) constitutes adequate relief for the Class.

### 4. Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes.

Here, Class Members will receive a *pro rata* share of the Settlement Funds of $500. Class Counsel also seeks an award of no more than $5,000 for the class representative, which was subject to the no "clear-sailing" provision concerning the class representative award. No objections have been made to the requested incentive award, and, for the reasons set forth in detail below, the Court finds that Spencer-Ruper has made a sufficient showing to support the requested incentive award. Furthermore, Class Members will receive full payment before Class Counsel is paid its fees and costs and before Spencer-Ruper is paid the incentive award.

Accordingly, the Court finds that the Settlement Agreement treats all Class Members equitably.

### C. Incentive Award

Spencer-Ruper requests a $5,000 incentive award for her work performed on behalf of the Class. Courts in the Ninth Circuit have consistently held that

an incentive award of $5,000 is reasonable.  *See In re Online DVD-Rental Antitrust Litg.*, 779 F.3d 934, 942–43 (9th Cir. 2015) (approving $5,000 incentive award where individual class members received only $12); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-md-02752, 2020 WL 4212811, at *6 (N.D. Cal. July 22, 2020) (incentive awards ranging from $2,500 to $7,500 were not unreasonably large); *Danshaw v. New Balance Athletics, Inc.*, 2019 WL 3413444, at *11 (S.D. Cal. July 29, 2019) (approving $5,000 incentive award).  In determining the adequacy of representation and the reasonableness of an incentive award, the Court considers whether (1) "the named plaintiffs . . . have any conflicts of interest with other class members[;] and (2) [they] will prosecute the action vigorously on behalf of the class."  *Online DVD-Rental*, 779 F.3d at 943.

The Court finds that the requested incentive award is fair and reasonable.  There are no structural differences in the Settlement Agreement or any other indicia of a conflict of interest between Spencer-Ruper and the Class Members.  Spencer-Ruper and the Class Members have the same kind and amount of claims against AllianceMed, and no sub-classes are warranted in this case.  *See id.* at 943.  Furthermore, it does not appear that there was any agreement between Spencer-Ruper and Class Counsel before the Settlement Agreement.  The incentive award is expressly conditioned on Court approval, and it is subject to the no "clear sailing" provision.[68]  Accordingly, Spencer-Ruper had no incentive to favor one group of Class Members over another.

Furthermore, consistent with the Court's instruction in the Preliminary Approval Order, Spencer-Ruper submitted a declaration in support of the Fees Motion, explaining the nature of her involvement as class representative.[69]  In

---

[68]   Settlement Agreement ¶¶ 13.4 & 13.6.

[69]   Decl. of Joan Spencer-Ruper in Supp. of the Fees Mot. (the "Spencer-Ruper Decl.") [ECF No. 81-1].

her declaration, Spencer-Ruper explains that she was the primary point of contact between Retina and Class Counsel.[70]  Spencer-Ruper benefitted the Class by filing and prosecuting this action, responding to written discovery, providing a deposition, participating in the parties' two mediations, and providing input to Class Counsel throughout the duration of this litigation.[71] Spencer-Ruper devoted 49.7 hours in support of the prosecution of this action.[72]

In view of these facts, the requested $5,000 incentive award is reasonable.

**D.   <u>Attorneys' Fees and Costs</u>**

Rule 23 authorizes a court to award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 941 (9th Cir. 2011) [hereinafter *Bluetooth*].

Fee awards in class action litigation can be based upon either the lodestar method or the percentage-of-recovery method.  *In re Optical Disk Drive Prods. Liab. Antitrust Litig.*, 959 F.3d 922, 929–30 (9th Cir. 2020).  "District courts have discretion to choose which method they use to calculate fees, but their discretion must be exercised to reach a reasonable result."  *Id.* at 929.  Courts that utilize the percentage-of-recovery method are encouraged "to perform a cross check by applying the lodestar method to confirm that the percentage-of-recovery amount is reasonable."  *Id.* at 930.

For fees calculated using the percentage-of-recovery method, in the Ninth Circuit the benchmark for a fee award in a common fund case is 25% of the recovery obtained.  *See id.* at 942 ("Where a settlement produces a common

---

[70]      *Id.* at ¶ 7.

[71]      *Id.* at ¶ 9.

[72]      *Id.*

1  fund for the benefit of the entire class, . . . courts typically calculate 25% of the

2  fund as the 'benchmark' for a reasonable fee award, providing adequate

3  explanation in the record for any 'special circumstances' justifying a

4  departure."); *see also Staton*, 327 F.3d at 968; *Six (6) Mexican Workers v. Ariz.*

5  *Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

6      In considering whether a request for attorneys' fees calculated pursuant

7  to the percentage-of-recovery method is reasonable, and whether a departure

8  from the benchmark rate is warranted, courts in the Ninth Circuit consider

9  factors including: "(1) the extent to which class counsel achieved exceptional

10  results for the class; (2) whether the case was risky for class counsel; (3) whether

11  counsel's performance generated benefits beyond the cash settlement fund;

12  (4) the market rate for the particular field of law;" and (5) the contingent nature

13  of the fee and the financial burden borne by the plaintiffs. *Optical Disk Drive*,

14  959 F.3d at 930 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th

15  Cir. 2002)).

16      Applying these factors, the Court finds that an award of 30% of the

17  Settlement Fund is reasonable in this case.  First, the outcome obtained by

18  Spencer-Ruper and Class Counsel is an exceptional result for the Class.  *Hensley*

19  *v. Eckhart*, 461 U.S. 424, 425 (1983) ("Where a plaintiff has obtained excellent

20  results, his attorney should recover a fully compensatory fee."); *In re Omnivision*

21  *Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ("The overall result and

22  benefit to the class from the litigation is the most critical factor in granting a fee

23  award.").  The per-Class Member settlement benefit of $500[73] significantly

24  exceeds the results obtained in similar TCPA actions within the Ninth Circuit.[74]

25

26  ───────────────
    [73]    Chumley Decl. ¶ 17.

27  [74]    Fee Mot. 9:12–10:19 (collecting cases in which a settlement of class TCPA
    claims was approved; on average, the value per class member in these cases is
28  less than $100).

-21-

1    *See Franklin v. Wells Fargo Bank, N.A.*, No. 14-cv-02349, 2016 WL 402249, at

2    *5 (S.D. Cal. Jan. 29, 2016) (collecting TCPA class action settlements and

3    finding a range of $20 to $100 value per class member claim).  This strong result

4    for the class weighs heavily in favor of the requested fee award.  The Court

5    further finds that an upward departure from the benchmark rate is warranted by

6    the substantial risks of continued litigation, as well as the quality of

7    representation by Class Counsel, who brought this case on a contingency basis

8    and received no compensation for the approximately two years that this case has

9    been pending.[75]  Therefore, the Court finds that the requested 30% fee award is

10   reasonable here.

11          The reasonableness of the requested fee amount is further confirmed by

12   an examination of the lodestar method.  *See Bluetooth*, 654 F.3d at 944–45.  Seth

13   Lehrman of Edwards Pottinger billed a total of 145.1 hours at a rate of $575 per

14   hour,[76] and Ronald Eisenberg billed a total of 342.3 hours at a rate of $550 per

15   hour.[77]  Thus, Class Counsel have lodestar-calculated attorneys' fees of

16   $271,697.50.  Based upon that lodestar sum, there is a "negative multiplier"

17   here of 2.13.[78]  A "negative multiplier" "suggests that the percentage-based

18   amount of the fee award" is reasonable.  *Galavis v. Bank of Am., N.A.*,

19   No. 18-cv-09490, 2020 WL 5898800, at *4 (C.D. Cal. Jul. 14, 2020); *see also In

20   re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184, 2020 WL

21   1288377, at *10 (N.D. Cal. Mar. 18, 2020) (a "negative multiplier" "strongly

22   suggests the reasonableness" of the requested fee).  Accordingly, the lodestar

23   method further supports the reasonableness of the requested fee award.

---

[75]    *See* Lehrman Decl. ¶¶ 41–49; 2d Eisenberg Decl. ¶¶ 31–39.

[76]    Lehrman Decl. ¶ 42.

[77]    2d Eisenberg Decl. ¶ 35.

[78]    $271,697.50 (total combined lodestar) divided by $127,500 (fees requested based on percentage-of-the-fund method) equals a "negative multiplier" of 2.13.

Class Counsel also seeks costs and expenses in the amount of $20,399.64.[79]  It is well established that attorneys may recover costs in cases "where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970).  "To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Id.*

Class Counsel incurred significant expenses in connection with this litigation, which expenses Class Counsel documented and billed separately.[80] The Court finds that Class Counsel's request for costs and expenses is fair and reasonable.

## III.  CONCLUSION

Based upon the foregoing, the Court hereby **ORDERS** as follows:

1.     Spencer-Ruper's Motion for Final Approval of the Class Action Settlement is **GRANTED** in its entirety.

2.     Spencer-Ruper's Motion for Attorneys' Fees, Costs, and Incentive Award is **GRANTED** in its entirety.

3.     The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED.**

Dated: February 18, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[79]     Fee Mot. 17:17–18.

[80]     Lehrman Decl. ¶ 44 & Ex. B; Eisenberg Decl. ¶ 37 & Ex. A.